## CITY OF BARTLESVILLE et al. v. KEELER et al.

No. 13432—Opinion Filed Sept. 23, 1924.

(Syllabus.)

1. **Municipal Corporations — Contract for District Sewer Construction—Validity of Proceedings.**

Where an ordinance is passed by the legislative body of the municipality, and shows on its face the plain intention to carry out the provisions of the statute relative to the construction of a district sewer, although it may be defective in detail, if the same is published, as provided by the statute, and is sufficient to give the property owners notice that a district sewer is to be constructed and will be constructed unless the statutory per cent. of proprietors located in the district protest against the same, and no protests are filed, but the sewer is constructed without objection by the property owners, such ordinance is sufficient to give the city authorities jurisdiction and power to make a valid and binding contract for building the sewer.

2. **Same — Determination of Benefits to Property—Conclusiveness.**

The question of benefits to accrue or likely to accrue on properties charged with a lien for the payment of the cost price of the construction of district sewers is legislative in its nature, and the determination thereof by the legislative branch of the municipality is conclusive on the courts. Newman et al. v. Warner-Quinlan Asphalt Co., 71 Okla. 284, 177 Pac. 375.

3. **Same—Validity of Contract — Defective Estimate by Engineer.**

The only method provided by law to make public improvements such as the construction of a district sewer, involved in this action, is by contract. The statutes applicable prescribe the preliminary safeguards, among which is the making of the plans and specifications, and the estimate of cost by the engineer. The estimate of the engineer, when

approved by the council, is sufficient to answer the requirements of the statute relative thereto, though the amount of the estimate may have been reached by the engineer by taking into consideration an element not a proper cost to be considered; but the proceedings thereafter taken on faith of such estimate do not stand upon the same basis as in case where no estimate of the engineer is made at all; but such estimate sufficiently complies with the statute, to make the contract based thereon a valid obligation, unless there be other reasons invalidating it.

**4. Same — Contractor Not Chargeable with Error of Engineer.**

. The contractor has nothing to do with the estimate required by the statute, and when the same is submitted by the engineer to the city council. and by it approved, and advertisement for bids to be made, contractors have a right to offer to perform the work at stipulated prices. If the price offered at such competitive bidding by one of the bidders is accepted, and contract made, and the work done as provided by such contract, no error or mistake on the part of the engineer as to what should or should not have been considered in making up his estimate, and which element is not disclosed on the face of the estimate itself, can in any wise invalidate the contract, or prevent the assessment to pay same in the absence of fraud, collusion, accident, or mistake on the part of the successful bidder in bringing same about.

**5. Same — Sewers — "Natural Course of Drainage"—Extension Beyond District.**

Section 465. Rev. Laws 1910, among other things, provides for the connection of district sewers with public sewers, other district sewers, or with the natural course of drainage. In the instant case, the "natural course of drainage." and the feasible outlet was beyond the limits and bounds of the sewer district, and into Caney river.

Held. that such outlet having been declared necessary by the council, not only the expense of constructing the sewer within the district, but the expense of constructing the same beyond the bounds of the district, is a proper charge upon the property in the district, and is a local improvement thereof, and the total cost should be apportioned and liens fixed upon the property of the district, as provided by law.

**6. Same—Reimbursement of City for Extra Expenses.**

Section 469. Rev. Laws 1910, authorizes the city to reimburse itself the expense incurred by it in building a district sewer which is in addition to the contract price of the work. Where the amount of such cost incurred by the city is drawn in question, and after trial of the issue, a court of competent jurisdiction finds a specified sum is sufficient to reimburse the city. and the conclusion of the trial court is not clearly against

the weight of the evidence, its judgment will not be disturbed.

**7. Same—Sewer Contract Sustained.**

The "contracts" in contemplation of the public improvement statutes authorizing the construction of district sewers such as here, subject only to substantial compliance with the statutory preliminary provisions, are not intended to be of less dignity than other instruments referred to as contracts. The same must not only be made in substantial compliance with the statute, but when so executed. their enforceability must be recognized by the courts. Such contracts cannot be made by the courts, but must be made by officers authorized to make the same. Courts cannot strike them down in whole or in part, except for reasons alleged and proven, which move the arm of equity to do so.

Record in the instant case examined, and held that the preliminary resolution and proceedings were in substantial compliance with the law. and the judgment of the trial court should be reversed, except as specified in the body of the opinion.

Error from District ·Court, Washington County; J. R. Charlton, Judge.

Action by George B. Keeler and others against the City of Bartlesville and others. Judgment for plaintiffs, and defendants bring error. Reversed, with directions.

O. A. Harrison, Shipman & Lewis, G. A. Paul, Rittenhouse & Rittenhouse, McPherren & Hannah, and R. C. Allen, for plaintiffs in error.

W. H. Kornegay, George. Campbell & Ray, and Montgomery & Montgomery, for defendants in error.

BRANSON, J. This action grows out of a sewer contract made by the city officials of the city of Bartlesville, Okla., in January, 1921. The questions of law urged as growing out of the record, both by the plaintiffs and the defendants, are not without difficulty, but we think that most of the questions raised by the pleadings, and presented by the record, are solved by rules established by this court.

The city of Bartlesville prosecutes this appeal. The city is joined, however, in the appeal by the contractors who built the sewer in sewer district No. 13 of said city, and whose contract compensation therefor is materially affected by the judgment of the trial court. The plaintiffs in the lower court, who are the defendants in error here, file a cross-petition in error. We think that it is unnecessary to separately discuss the questions presented by the cross-petition in error and

the petition in error. There is little dispute about the facts as disclosed by the record.

The plaintiffs, as property owners and taxpayers in sewer district No. 13 of the city of Bartlesville, brought this action to have vacated and set aside an ordinance levying an assessment according to the area of the lots located in said sewer district, and to enjoin an assessment as against the property. The suit was instituted sometime after the work was completed.

The plaintiffs contend that the ordinance of necessity, being ordinance No. 978, passed November 18, 1920, did not give the city officers any power to make the contract here in question. No authority is cited in support of this contention. The said ordinance creates sewer district No. 13, prescribes the bounds thereof, by reciting the streets surrounding the same. Section 2 of the ordinance directs the engineer to prepare plans, specifications, and estimates of cost of this work, based on the materials specified, and the denominations, character, material, etc., of the sewer line to Caney river. It also provides the cost shall be assessed against the district. Sections 465, 468, and 469, Rev. Laws 1910, provide for creating sewer districts. The ordinance, we think, is sufficiently broad and definite to comply with the provisions of the statute authorizing creation of sewer districts, and authorizing the approval of the estimate, plans, and specifications and advertisement for bids, and making contract for the construction thereof.

We hold that where the ordinance as passed by the legislative body of the municipality shows on its face the plain intention to carry out the provisions of the statute relative to the construction of a sewer system, for a particular district, although the ordinance is defective in detail, if the same is published as provided by the statute, and is sufficient to give the property owners notice that improvements are about to be constructed, and will be constructed unless the property owners protest against the same, and no protests are filed, but the property owners permit the work to proceed, that such ordinance is sufficient to give the city authorities jurisdiction to make the contract, and the property owners cannot attack the assessment to pay for such improvements on such alleged defect or irregularity.

This court, speaking through Mr. Justice Williams, in the case of Kerker et al. v. Bocher et al., 20 Okla. 729, 95 Pac. 981, among other things, said:

"Where the city council shall deem it necessary to pave any street or any part there-of within the limits of the city, for which a special tax is to be levied, and such council by resolution duly passed, declares such improvements necessary, and causes the publication of same for four consecutive weeks in a proper newspaper, the owners of the majority of the lots or parts of lots liable to taxation therefor, failing within 20 days thereafter to file with the clerk of said city, protest against such improvements, and proceeds to cause such improvements to be done without the adoption of an ordinance to that end, but by adopting plans and specifications, including an estimate of the cost of such improvements, and authorizing the clerk to advertise for bids therefor, the contract being accordingly let under competitive bidding, * * * under such circumstances can be estopped from questioning the validity of such assessment. * * * Every person, as a member of a municipal community, thereby enjoying the incident benefits, takes notice of the accompanying obligations. Streets are to be laid out, graded, paved and lighted. The constabulary must be maintained to enforce peace and preserve order. Sewerage systems and water supplies must be provided. No one is entitled to enjoy these advantages and to be permitted to successfully contend that the laws, ordinances, and resolutions under which such benefits and big advantages are created, regulated, and controlled, are invalid, and thereby escape the resultant burdens. * * * No man can expect to have property in cities abutting on public thoroughfares and streets, without bearing the burdens of special taxation to maintain grades, build sidewalks, and macadamize and pave the streets; and he acquires his property with the full knowledge of the fact that the legislative power of the state can be exercised to levy and provide for an assessment or special tax for such improvements. The legislative authority of the state, or when properly authorized to be exercised, the municipality, may determine over what territory to apportion the burdens, and the whole subject of taxing districts belongs to the Legislature, and the authority may be left to local boards, or bodies. County of Mobile v. Kimball (U. S.) 26 L. Ed. 238; Bauman v. Ross, 42 L. Ed. 270; Schumaker v. U. S. (U. S.) 37 L. Ed. 170." Orr v. City of Cushing, 66 Okla. 153, 168 Pac. 223; City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567; City of Perry v. Davis et al., 18 Okla. 427, 90 Pac. 865; Pryor v. Western Paving Co. 74 Okla. 308, 184 Pac. 88.

Another contention is district No. 13 cannot be charged with the outlet to Caney river.

The record discloses in this case that the topography of the district known as sewer district No. 13, as laid off by the legislative determination of the city council, could have an outlet only by going from the edge of the district a distance of approximately one mile to Caney river, and that under the ordi-

nance resolutions, etc., of the council. which authorized the construction of the outlet to Caney river, to be charged against the property owners in sewer district No. 13, plaintiffs contend, rendered the whole proceedings void.

The authority of municipalities to construct improvements such as here, is purely statutory, and it would doubtless be accepted without controversy that unless the statute authorized the construction of the outlet. the property could not be charged with this expense. The statute seems to have recognized a truth commonly known to all, that a proper sewer system in a city is necessary, not only for the convenience, but for the health and safety of the public. It would be no system at all without proper outlet. The sewer in question is what is known to the statute as a "district sewer," and is authorized by sections 465, 468, and 469, Rev. Laws 1910. Among other things, section 465 provides that:

"District sewers shall be established within the limits of the district to be prescribed by ordinance, and shall connect with public sewers or other district sewers, or with the natural course of drainage, as each case may be."

The record in the instant case fails to disclose that the Caney river outlet was not the only feasible outlet. It was and is the natural course of drainage.

This question has been before the courts on different phases, and they sustain the proposition laid down in McQuillin on Municipal Corporations, vol. 4, sec. 1434, which says:

"Construction of part of sewer outside of city does not change its character as a local improvement for which assessments may be made against the owners of property benefited."

In the case of McMurry v. Kansas City et al. (Mo.) 223 S. W. 615. this question was before the Supreme Court of Missouri, and that court concluded its discussion as follows:

"Therefore, if outlets, pumping stations, or local laterals, extensions, and connections are necessary, as appellant concedes, to render the sewer operative and effective, then they are as much a part of the sewer system as manholes and catch basins, or any other appliance. and can be paid for in the same way as the remaining portion of the sewer." Hall v. Sedalia, 232 Mo. 344; McChesney v. Village of Hyde Park (Ill.) 37 N. E. 858; Fisher v. Chicago, 213 Ill. 268.

In the case of Johnson v. Duer (Mo.) 21 S. W. 801, the court says:

"The charter provides that district sewers shall connect with 'public sewer or other district sewer or with the natural course of drainage.' The efficiency of the sewer as a means of drainage depends entirely upon this requirement of the charter. A sewer with no proper outlet will create a nuisance, instead of improving the sanitary condition of the locality. The requirement, then, is of a substantial matter, and if not followed by an ordinance establishing a sewer, the cost of construction could not be enforced by local assessments."

Though not necessary for decision of the case, this court in the case of Stone v. City of Sapulpa, 28 Okla. 864, 115 Pac. 1113, said:

"It does not alter the construction of this statute to suggest that the district sewer, built in the original district No. 1, has no sufficient outlet; and that the proposed new sewer will furnish such convenience, and that without it the existing sewer will in a great measure be rendered valueless, for the law furnishes a remedy for this condition. An outlet to a sewer is an essential part of it; and in order to secure such outlet the sewer may be extended beyond the district or even outside of the municipal corporation; and section 986 authorized the city to prescribe by ordinance for the connection of such sewers with the public sewer, or with other district sewers, or with the natural course of drainage; and if in the instant case an outlet for the sewer constructed in the original district cannot be maintained without an extension thereof beyond the borders of the district, although that question is not here involved, we doubt not that the power resides within the city council to authorize the extension of said sewer to an outlet at the expense of the property owners in the district, for the power of the city council is not limited by said section to the construction of one sewer in a district, but may construct such a number as the majority of the property holders resident therein shall petition therefor, and may enlarge and extend those already constructed."

Another contention made by the plaintiffs is that the assessment must not exceed the benefits conferred, and if the assessment necessary under the contract is in excess or equal to the value of the lot assessed, it results in the taking of property without due process of law, and is void.

We think the question of benefits to accrue or likely to accrue, under statutes authorizing municipalities to construct public improvements such as in question in this case, is legislative in its nature, and the determination thereof by the constituted authorities is conclusive upon the courts. This court, in an opinion rendered by Mr. Justice Owen, where the same question was raised, growing out of a paving contract, said:

"Whether the lots abutting on a street im-

provement are benefited to the amount of the assessment levied against each lot, is a legislative question, and having been determined by the legislative power of the city in regular proceedings, is conclusive in an action to enjoin the collection of the assessment on the ground that the cost exceeds the benefits." Newman et al. v. Warner-Quinlan Asphalt Co., 71 Okla. 284, 177 Pac. 375.

This proposition of law is sustained by numerous authorities cited in the said opinion, as well as in the case of Hancock v. City of Muskogee (U. S.) 63 L. Ed. 1081, and Allen v. City of Muskogee, 53 Okla. 230, 156 Pac. 315.

In the case of Pryor v. Western Paving Co., 74 Okla. 308, 184 Pac. 88, this court said:

"Such proceeding meets all the requirements of due process of law. Of course, the city authorities cannot act arbitrarily or capriciously in revising the appraisement and apportionment. Every requirement of the statute was strictly followed in this case. The plaintiff never filed such complaint or objection as is contemplated by the statute. The objection was based upon the ground that his property was not benefited in any manner, when he could complain and object only to the appraisement and apportionment of the benefits. * * * But the plaintiff is in no position to now object to paying for the paving. This record discloses that at the time he made his first objection, the work was practically done. He made no effort and took no step to prevent the work until after the completion thereof, and it is no longer an open question in this jurisdiction that one who stands by and permits work of a public nature to be done, which benefits his property, is estopped from asserting any irregularity in the proceedings, and denying that his property was benefited thereby."

A more difficult contention is made by defendant. The record discloses from the undisputed evidence of the engineer himself that he in making the estimate of the cost of the improvements, considered as one element thereof the discount at which the warrants sold on the market — in this case, 25 per cent. The record also discloses that this does not appear from the face of the estimate, and the bidders had no knowledge thereof.

The main question in this lawsuit is, Can the contract entered into by the city authorities be avoided, and the assessment to pay the same made after the completion of the work be enjoined on account thereof? The successful bid was within the estimate. The effect of the judgment of the trial court is not that the contract for building the sewer in the district in question was invalid, on account of the inclusion of this element, but

the court reduces the contract price an amount equal to one-third of the total. Or, in other words, makes a new contract between the city and the contractor, and we are faced with the question as to whether the contract is a valid and binding obligation, whether or not it can be declared of no force and effect in the instant case, there being no fraud or collusion alleged or proven.

The judgment of the trial court is evidently based upon his first conclusion of law, which is:

"The law requires the city engineer to make a full and complete estimate of the actual cost on the basis of cash, or warrants at par, and any other estimate than one so made is illegal and unwarranted."

The sections of the statute authorizing the construction of sewers by municipalities are found in article 3 of chapter 9, Rev. Laws 1910. Among other provisions are those contained in sections 465 to 469, both inclusive, of said article, which authorize the construction of what is known to the statute as "district sewers." Among other provisions the city authorities are authorized, when they deem a district sewer necessary, to pass an ordinance of necessity, directing that plans and specifications be made by the city engineer, together with an estimate of the cost thereof. **We fail to find that there is anything in the statute placing a limitation or restriction upon what elements shall be taken into consideration by this particular city official who makes the estimate.** The statute does provide that the estimate shall be submitted to the city council and by it approved. The estimate in the instant case after being compiled, and without showing the element referred to as the discount on the warrants, was presented to the mayor and council of the city of Bartlesville, and duly approved, advertisement was duly made for sealed bids for the performance of the work in strict compliance with the statute, and no question is raised as to the preliminary proceedings, except that pointed out, as latent, in the estimate of the engineer. The contention is that this action on the part of the engineer made his estimate void, or a nullity, and that the subsequent proceedings are on the same basis as if no estimate had been made as all. Pine v. Baker, 76 Okla. 62, 184 Pac. 445; Muskogee v. Samuels, 77 Okla. 314, 188 Pac. 669; Muskogee v. Nicholson, 69 Okla. 273, 171 Pac. 1102.

The preliminary provisions outlined in the sections of the statute referred to, supra, are clearly in anticipation that a contract shall be made by the city authorities,

the evident intent and purpose of the statute being that after the resolution of necessity, the specifications, profiles, and estimate made by the engineer for the guidance of the city authorities, when approved, that the officers shall then, after competitive bidding, accept the most advantageous bid, and enter into an instrument referred to as a "contract," which shall fix the amount to be levied against the property in the sewer district, by a subsequent ordinance to be passed, known as an "assessing ordinance."

If the court should acquiesce in the demand of the plaintiff taxpayers to declare of no force and effect the contract made for public improvements, such as is involved in the instant case, it would, as we view it, result in nullifying the purpose and intent of the statute. The defect, if any, was one not known to the city council, and unknown to those called upon to bid upon the work. If the validity of the contract is made to depend, not upon what the written estimate required to be made shows on its face, but upon what the engineer himself may have had in mind at the time he compiled the estimate, but which he failed to disclose on the face of the estimate, then the purpose of the statute to enable the construction of such necessary public improvements must fail. No individual or aggregation of individuals could undertake such projects believing that they had an instrument binding as a contract, when the contract on which they rely can at the desire of one individual, who asserts he had something in mind which he failed to disclose, and unknown to the contractor, defeat the contract itself, after the work agreed to be done had been completed in each and every detail, as provided by the contract. Such a construction would make the salutary provisions of the law instruments of fraud, and the acts of those authorized to perform an important step in the procedure would not only fail to vitalize or bottom the instrument referred to as the contract, but would leave it within the power of one individual to strike down the instrument itself.

The authority of the city officials to take definite steps necessary to make public improvements such as involved in this action is purely legislative. The Legislature of the state, not unaware that the municipalities elect their respective officers, intrusted the power to legislate as to improvements necessary to such officers, who presumably would have the best interest of the property owners, as a primary consideration, in each and every act authorized to be done, where a special tax is required. No authority is

given to such officers by the statute to build such improvements, except by a contract, entered into through the city council. There is nothing in the statute authorizing the letting of such a contract by city officials which in any way indicates that the instrument executed by the officials and known to the statute as a "contract," has any less sanctity than such term usually imports. It must be enforceable, or it lacks the essential elements of such instruments. It, of course, may be avoided, but there is nothing in the statute authorizing its execution which in any way indicates that it may be avoided for reasons other than other character of contracts might be avoided. And that only for reasons alleged and proven, which invokes equity. The sections of the statute, supra, authorize and make prerequisite plans, profiles, and specifications, together with the estimate of the cost to be made by the engineer. This, of course, must be in writing, and filed with the city officials. When made, being a document authorized to be made by a public officer, it is presumed to contain no latent element which would in any wise destroy its potency for the purpose intended by the statute the estimate should serve, to wit, one of the preliminary steps to give the officers authority and jurisdiction to award the contract. There is nothing in that statute which requires that each item in the mind of the engineer should be specifically set forth, nor indeed, any item should be specifically set out. A lump sum is sufficient. No authority is cited, and we perceive that no good reason exists, when this estimate is filed and approved by the city council, bids are requested and one is accepted which falls within the estimate, and which they could not accept if the bid exceeded the estimate, why a contract so made is not conclusive and binding upon all parties interested therein. When the work is completed, as per the plans and specifications, under the terms of the contract so made, we think the rule laid down in the case of Weaver v. Chickasha, 36 Okla. 226, 128 Pac. 305, must obtain, to wit that in the absence of fraud and collusion expressly pleaded and proven, there is nothing on which a court of equity can fasten its authority. In the absence of fraud or collusion, the validity of the contract and its enforceability depends upon the face of the proceedings.

In the case of City of Muskogee et al. v. Burford et al., 77 Okla. 174, 186 Pac. 949, this court speaking through Mr. Justice Johnson, said:

"Unless the whole assessment for the purpose of grading, curbing, and draining the

street is void, cause for injunction cannot be maintained, for he who seeks equity must do equity. If any part of the assessment against the owner's land is valid, he cannot have an injunction unless he has paid or has offered to pay such part as is valid."

The courts cannot fit the law to the failure of public officials, or any one of them, to look to the best interest of proprietors, whose agents the city officials are, in carrying out the provisions of the statutes governing such improvements.

The effect of the holding of the trial court was that the estimate was not void, but conferred jurisdiction upon the officers to proceed as by the statute directed. Thus far, we think the trial court was correct, but notwithstanding this, the trial court undertook to scale the contract down to what the trial court found the engineer's estimate of the actual cash cost of the work should have been, had the engineer not taken into consideration the item against which the contention is made.

To repeat, in the absence of a statute specifically enumerating what items of cost or profit the engineer shall take into consideration in making his estimate, and causing the same to be set out in the estimate presented to the commissioners for their approval, in writing, how can an estimate which fails to show on its face the inclusion of the item involved herein invalidate the contract made by the city commissioners, in the absence of some ground alleged by the plaintiff of which equity will take cognizance?

In approximating costs on projects of this nature, even experts will be at great variance. No evidence in the record discloses what the building of this sewer actually cost. Such work frequently results in great loss to the contractor, rather than any profit, but the judgment of the trial court would drive the builder of the improvements to accept what the court finds the estimate should have been, on an actual cash cost basis, and that the builder accept sewer warrants at par therefor, admittedly worth only 75 cents on the dollar. This of course carries the matter to a business absurdity, even though it may furnish technical grounds on which a lawsuit may be predicated. Under the authority of the statute, by notice duly given, the bidder is invited to bid, and under authority of the statute the city officials have a right to reject his bid. The bidder is certainly not required to place a bid for improvements at what it would actually cost in cash to build the improvements. Certainly the engineer is not required to make an estimate on an actual cash cost basis, for the statute requires that no bid can be accepted unless it be within the estimate. So, if the engineer was correct in his estimate made on an actual cash basis, the contractor will be required to bid, if at all, and do the work for less than it actually costs. The statutes are not susceptible of this interpretation.

The record in the instant case discloses that all of the notices to property owners giving them an opportunity to protest against making the improvements, and to be heard upon the bid before a contract was entered into, were given, and that not only did no property owner protest against making the improvements, but they were insisting that the sewer be built. No one protested against the amount of the bid until long after the entire work was completed.

In the case of Jenkins v. Oklahoma City et al., 27 Okla. 230, 111 Pac. 941, this court, speaking through Mr. Justice Kane, said:

"The city council having acquired jurisdiction of the parties and subject-matter in controversy, there is no other question raised that can be reviewed, as the proceeding below must be treated as a collateral attack. The weight of authority is very decidedly in favor of the rule that where there is jurisdiction, the property owner who sees the improvement made, and offers no objection until after the work has been done, cannot defeat the assessment upon the grounds that the proceedings have not been regular. * * * Public works are undertaken, as every one knows, under authority delegated by law to public officers, and there is little or no reason why a property owner who has full notice of what is being done should be allowed to stand by in silence until the work has been completed, and then escape paying for the benefit his property has received. If he would avoid this result, he should act promptly, and if he fails, he should not demand that the persons who have done the work should go unpaid. * * * If the party who assails the assessment has induced the officers to enter upon the work, his complaint should meet with no favor from the courts * * * In the instant case, there is no offer on the part of the plaintiff to do equity by offering to pay part of the assesment justly due."

In the case of the City of Chickasha v. O'Brien et al., 58 Okla. 46, 159 Pac. 286, this court quotes with approval from Elliott on Roads and Streets, in part as follows:

"It may be safely affirmed without multiplying illustrations that where nothing more than errors or irregularities in the proceedings appear an injunction will not be awarded, unless it is applied for before the work has been done, and even then the writ will not issue, if the errors are not of a material character, nor will it issue if there is an adequate remedy at law."

In the case of Weaver et al. v. City of Chickasha, supra, this court said:

"Where a contract for street improvements has been let * * * by the mayor and council to the lowest and best bidder, and is within the engineer's estimate, and jurisdiction of the subject-matter has been obtained by the council, and all the resolutions and proceedings required by law have been regular and bids have been received, and the contract let under the notice required, such action of the mayor and council is final, as to the contract price of the work, in the absence of fraud, collusion, or mistake"

Though the situation presented by the record in this case is one apparently harsh in fact, the injustice to the proprietors, if any, is not due to the bidder. He is the only person who has a dollar invested in this public benefit enterprise, only to be penalized by a long drawn out suit, after completing his work in every detail, as required by his contract, and without receiving any of his compensation therefor, or any part tendered, and that on grounds of alleged acts on the part of a public official and agent of the property owners, as to which the record fails to disclose that the contractor knew anything. In fact, the engineer testified that he never discussed the items that went into his estimate with the bidders, but that on which the contract is sought to be avoided was purely dormant in the mind of the engineer himself, and it is upon his testimony alone that he did take such an item into consideration in making a document which he alone had power to make, on which the court predicates the judgment striking down and destroying the contract, which was made in reliance upon the validity of the estimate which had been adopted by the city authorities.

The fault, if any exists, lies in the failure of the legislative authority of the state to place sufficient safeguards around property owners in such public improvement districts who either take no interest or insufficient interest in proposed improvements and the contract cost thereof to safeguard their rights against excessive liens for such improvements. The Legislature might have, with propriety, provided for the appraisement of lots located in such districts, and that the estimate for such improvements should not exceed a limited per cent. of the appraised value of the respective lots. But the Legislature placed no limitation upon the engineer, neither did it prescribe what he should put on the estimate sheet, submitted to the city authorities for their approval, but left it entirely within his own conscientious determination, and apparently its only purpose, from the legislative enactment, is to prohibit the city authorities making a contract which exceeds the amount of the estimate.

The primary object of these preliminary proceedings is that every one shall have notice a contract is to be made, compliance with which should be guaranteed by a proper and sufficient bond, to be approved by the city authorities. After the contract, the burden of building the sewer is upon the contractor, or on his default, on the surety company. When the work is completed, the only thing remaining for the city officials to do is to levy an assessment, according to area, upon each lot in the district. Why such a rule as fixing benefits according to area of lots should have ever been established as the law by the legislative branch of the state, we would be at loss to explain, if explanation were demanded. But that is the statute. One inadequate feature lies in the fact that sewers are not actually beneficial in any wise to vacant lots; they are only prospectively beneficial. Doubtless there are few sewer districts in any town in the state in which there are not vacant lots. The material benefit is to improved property where a sewer becomes indispensable, not only to the comfort, but to the health and safety of the citizenship who may chance to reside there. These inequitable conditions have many times presented themselves to the courts in this state, for more than a decade past, but the Legislature has made no change in the method of prorating the amount of liens to pay the contract price for such improvements. It would appear to be violative of sound principles of public policy to permit an officer charged by law with making an honest estimate on which he knows bids may be accepted or rejected, resulting in contracts on which parties, relying upon the face of the record, would expend large sums of money, to impeach the same by his own testimony, as to what he and he alone had in his own mind at the time of compiling the estimate. This would make the contract defensible at the whim, will, or caprice of one individual, as to matters of which the public interested could have no means of knowledge from the record, and no actual knowledge; and according to the engineer's own testimony, none on the part of the contractor in the instant case. Could such an instrument be said to rise to the dignity of a contract, as it is designated? Such, of course, would place the contractor at the mercy of the engineer, as to matters not disclosed by his written estimate. This could have no other effect than to prohibit any responsible individual from engaging in the construction of such a public enterprise, for

his compensation could never be known; the resultant, his credit impaired or destroyed. If such a policy so prohibiting improvements authorized by the Legislature is to be adopted, it should be by the legislative branch, which speaks the public policy of the state, and not by the courts. The courts must refuse to invalidate contracts, when made in substantial compliance with law, unless some reason exists which moves the arm of equity to strike down the same.

In a case which was a sequence of the judgment of the trial court in the instant suit, entitled Reed et al. v. City of Bartlesville et al., decided by this court March 13, 1923, Mr. Justice Kane said:

"We are unable to perceive that the estimate of costs required by this section has any binding effect whatever upon the contractors in the matter of making bids. It is true it does fix the maximum sum which the city authorities may not exceed in making the contract, but within this limit, indeed beyond it, the contractor is free to exercise his own judgment in the matter of bidding. Neither does the statute require, as council seems to assume, that the estimate of costs shall be based upon the actual or cash cost of the work. The section merely provides for the preparation of a preliminary estimate of costs, and of course in making it the city authorities must necessarily make it sufficiently in excess of the actual cost to provide a reasonable margin of profit for the successful bidder.

"It may be true, and probably is, that the bids to some extent are based on the sections, profiles, and estimate of costs prepared by the city authorities, but there is nothing in this which prevents the contractors from exercising their own independent judgment and making their bids upon a basis that will insure them a fair profit. * * *

"While at this time we are not called upon to decide which of these tribunals correctly interpreted the law, we may say in passing that if the bid was fair and not fraudulently excessive, we are unable to perceive that the action of the city authorities complained of furnishes any ground whatever for interfering with paying the contractors the full amount stipulated in the contract, which was well within the estimate."

Although the above opinion was withdrawn, pending the final determination of this case, the language of Justice Kane well expresses the fallacy on which the judgment of the trial court in the instant case was apparently based. In the language of the closing paragraph, supra, in said opinion, unless the price is fraudulently excessive, no reason can exist why a contract within the estimate should not be enforced. There is nothing in the record in the instant case which shows that the contract or the cost price of the improvements, with a reasonable profit, was fraudulently excessive. In the absence of such showing and in the absence of fraud and collusion on the part of the contractor, the contention made by the plaintiffs cannot be sustained.

Section 7 of House Bill 347, of the regular session of the Legislature of 1923 (Sess. Laws 1923, ch. 212, p. 375), provides:

"In all cases where any city, whether operating under the provisions of a special charter or under the provisions of the laws of the state of Oklahoma, has heretofore acquired jurisdiction to construct any public improvements payable by special assessments and has heretofore let any contract therefor, and said improvements have been completed in accordance with the terms of such contract and assessments have been or should be levied to pay the costs of such improvements, and such assessments have been found or adjudicated to be invalid, in whole or in part, by reason of any irregularity arising from the preparation and approval of the engineer's estimate of cost of such improvement or the charging of engineering fees, printing, appraising, and advertising fees, or any other irregularity, such assessments are hereby validated."

It is contended by the defendants that even if there be any basis in reason for plaintiffs' contention that the inclusion of the item complained of by the engineer in any wise affected the validity of the contract, and the contract price, that said act of the Legislature cured any such defect, although suit had been filed in the instant case before the passage of said act, Said act of the Legislature was passed at a time when there were considerable number of suits pending in the courts, as was the instant case, where the contract made was sought to be avoided on the grounds of the inclusion of an item as here in the estimate made by the engineer, but not disclosed on the face of the written estimate approved by the city council.

This court has heretofore had before it the effect of a curative statute, such as this one is intended to be, and its holding is in consonance with that of the leading text-writers and cases on the question, and is well stated by this court in the case of C., R. I. & P. Ry. Co. v. Austin, 63 Okla. 169, 163 Pac. 517, wherein it was said, quoting, with approval, 2 Lewis' Sutherland, Statutory Construction, page 1232:

"Curative acts may apply to pending proceedings, and while the Legislature cannot annul or set aside the judgment of the

court, it may remove a defect on which the judgment proceeded. * * *

"In consideration of the legislation of this character, the immediate question to be considered in determining its validity and effect is to ascertain whether the act which it attempted to validate would be effectual for the purpose intended if a valid law enacted prior to the doing thereof had directed that they be done as they were done. In such cases the authority of the Legislature to validate them thereafter is well established, and rights predicated upon such curable defects are not deemed meritorious, nor entitled to the protection ordinarily accorded to vested rights."

Again, the court quotes from 2 Lewis Sutherland, Statutory Construction, page 1237:

"Curative acts apply to pending proceedings. It is truly said that the bringing of suit vests in a party no right to a particular decision, and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment was rendered. It is no objection to a curative act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for the act. Of course, the Legislature cannot annul or set aside the judgment of a court, but it can remove a defect on which the judgment proceeded."

These principles are sustained by numerous authorities, among them being: Mayor et al. of City of Guthrie v. Territory, 1 Okla. 188; 31 Pac. 190; Kansas City et al. v. Silver et al. (Kan.) 85 Pac. 805; In re Marshall Avenue (Pa.) 62 Atl. 1085; Anderson v. City of Ocala (Fla.) 91 South. 182; Douley v. City of Pittsburg (Pa.) 23 Atl. 395; Whitney v. City of Pittsburg (Pa.) 23 Atl. 395; Blount v. City of Jonesville, 31 Wis. 648; Haggart v. Kansas City (Kan.) 94 Pac. 789, and City of Clinton v. Walliker (Iowa) 68 N. W. 431, and the numerous authorities therein cited and quoted.

But irrespective of these rules governing the force and effect of a curative statute, and its applicability to the instant case, we fail to see how it can be avoided that the Legislature, mindful of the pendency of such suits and of the existing statute authorizing the engineer to make the estimate, enacted this legislation with the view that it should be a declaration that the estimate should not be considered as other than it appears on its face to be, by the courts, in determining the validity of contracts entered into by municipalities for public improvements.

Another question is raised, to wit, that the city authorities had no power to add to

the other total cost, representing the contract price for the labor and materials furnished by the contractor of 7 per cent as an engineering fee. The statute authorizes cities erecting public improvements to reimburse themselves for expenses actually incurred by the municipalities, and the method of doing this adopted by the city council finds no inhibition in the statute.

But in this case the issue is presented by the pleadings that the 7 per cent. is far in excess of an amount reasonable or sufficient to reimburse the city of the services of the engineer in the employ of the city, and the court found as a fact that $1.500 was a reasonable and sufficient amount to so reimburse the city. While we hold that, acting under such statute, the city can reimburse itself, and if the per cent. fixed is fair and reasonable, an assessment to meet the same cannot be enjoined, but in the instant case, the finding of the trial court that $1,500 was a sufficient amount to reimburse the city finds support in the record, and we think that the judgment of the trial court, enjoining a levy to raise a greater amount than this for such purpose, should be sustained.

For the reasons given, this cause is reversed, with direction to the district court of Washington county to enter a judgment in favor of the defendants, except that the assessing ordinance shall only provide for a levy sufficient to raise the sum of $1,500 to reimburse the city for the services of the engineer.

MASON, JOHNSON, LYDICK, GORDON, and WARREN, JJ., concur.