Note.—See under (1) 29 Cyc. p. 695. (2) 37 Cyc. p. 1357; 26 R. C. L. 411.

---

### CITY of BARTLESVILLE et al. v. COOMBS.

No. 16166—Opinion Filed Nov. 17, 1925.

Defendants' Petition for Rehearing Denied March 30, 1926. Plaintiffs' Petition for Rehearing Denied April 13, 1926.

(Syllabus.)

**Case Followed.**

Judgment of the lower court is affirmed upon authority of the case of the City of Bartlesville et al. v. J. T. Riggs and F. M. Overlees, 114 Okla. 181, 245 Pac. 603.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action between the City of Bartlesville et al. and Leslie Coombs et al. From the judgment the former brings error. Affirmed.

E. E. Heyl, A. O. Harrison, R. C. Allen, G. A. Paul, and Shipman & Lewis, for plaintiffs in error.

Montgomery & Montgomery, Campbell & Ray, and W. H. Kornegay, for defendants in error.

This cause on proper motion was consolidated with case No. 16165, City of Bartlesville et al. v. J. T. Riggs and F. M. Overlees, and the judgment of the lower court is affirmed upon authority of the case of the City of Bartlesville et al. v. J. T. Riggs and F. M. Overlees, 114 Okla. 181, 245 Pac. 603.

NICHOLSON, C. J., and PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

---

### CITY OF BARTLESVILLE et al. v. RIGGS. et al.

No. 16165—Opinion Filed Nov. 17, 1925.

Rehearing Denied March 30, 1926.

(Syllabus.)

**1. Municipal Corporations — Validity of Sewer Construction Contract—Irregularity in Estimate of Cost Unknown to Contractors.**

Where a city undertakes to establish a sewer district therein and it has followed all the material requirements of the statute pertaining to such formation, and it thereafter enters into a contract for the installation of a sewer system for such district and such contract is free from fraud and collusion and the contractors complete their work under said agreement with the city, and it thereafterwards appears that the city engineer while making the estimate for said work took into consideration the probable discount of the sewer warrants in estimating the cost of such work, and thereby caused said estimate to be increased, but such increase was not shown upon the face of said estimate and the contractors had neither notice nor knowledge that the city engineer had increased the estimate in order to allow a probable discount on such sewer warrants, such act upon the part of the city engineer is not sufficient to cause an annulment or avoid the contract between the city and such contractors.

**2. Appeal and Error—Review of Equity Case—Conclusiveness of Findings.**

Where the city engineer makes an estimate on a certain precentage for engineering charges and upon trial the court finds that such estimate is excessive, and where the action as presented to the court under the pleadings and proof was one of equitable cognizance, such findings upon the part of the court will not be disturbed unless it was clearly against the weight of the evidence.

**3. Judgment Sustained.**

Record examined, and held, that same supports the judgment of the court.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by J. T. Riggs and F. M. Overlees against the City of Bartlesville and others. From the judgment defendants bring error; plaintiffs file cross-appeal. Affirmed.

E. E. Heyl, A. O. Harrison, R. C. Allen, G. A. Paul, and Shipman & Lewis, for plaintiffs in error.

Montgomery & Montgomery, Campbell & Ray, and W. H. Kornegay, for defendants in error.

LESTER, J. This cause arose over a sewer contract between the city officials of the city of Bartlesville and the firm of Reed & Wheelock. Under the terms of said contract, Reed & Wheelock agreed to construct a sanitary sewer system in what is known as sewer district No. 14, city of Bartlesville, Okla. A number of taxpayers of said district brought an action in which they sought to have the contract between the city of Bartlesville and Reed & Wheelock be declared null and void. The plaintiff taxpayers sought other relief, which will be hereinafter mentioned.

A trial was had to the court, and the court found all the issues against the plaintiffs, save and except a reduction in the engineer's fees from 7% to $221.70, being the total of the items the engineer was able to remember having expended in connection with the work, exclusive of the work done by the engineers of the city of Bartlesville, who are on the pay roll of the city. Both parties to this action in the court below filed exceptions to the findings of the court.

The defendants prosecute this appeal to review the action of the trial court and the plaintiffs file their cross-appeal. For convenience the parties will be referred to as they appeared in the court below.

The plaintiffs sought to set aside the ordinance assessing their property and the property of others within the sewer district for sewer improvements. The suit by the plaintiffs was commenced within 60 days from the passage and approval of the assessing ordinance sought to be set aside.

The statute in force at the time regulating said assessment was section 471, Rev. Laws 1910, which is as follows:

"No suit shall be sustained to set aside any assessment or certificate issued in pursuance of any assessment or to enjoin the city council or town board from making any improvement, unless brought within 60 days after the passage of the ordinance making such assessment: Provided, that in the event any special assessment shall be set aside or be invalid in whole or in part, the city council or town board may, at any time, in the manner herein provided for an original assessment, proceed to cause a new assessment to be made, which shall have the like force and effect as an original assessment."

The plaintiffs having presented their case on cross-appeal, we will first dispose of their contentions.

The plaintiffs in their brief urge that the statute under which the proceedings were had, the contract let, and the assessment made is unconstitutional, and in answer to this contention this court has passed on this particular question adversely to the plaintiff's theory in the following cases: City of Perry v. Davis & Younger, 18 Okla. 429, 90 Pac. 865; City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567; Hancock v. City of Muskogee 66 Okla. 195, 108 Pac. 445; City of Bartlesville v. Keeler, 107 Okla. 14, 229 Pac. 450.

The plaintiffs urge that the entire sewer system was advertised for the purpose of obtaining bids thereon, and not in the sections or subdivisions. As to this objection, we find no statutory regulation providing that bids must be submitted either on sectional or subdivision units, and the plaintiffs do not cite any authority in support of their contention on this proposition.

The plaintiffs' also urge that there was not sufficient bids on the proposed work as would justify or warrant the letting of the contract for the entire work. The statute providing for advertising and bidding on said work (Comp. St. 1921, sec. 4405) is in part as follows:

"Upon the completion of the plans and specifications and their adoption by the mayor and council or the board of trustees they shall advertise for sealed bids for the performance of such work, for at least ten days if published in a daily newspaper, or at least two weeks if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the mayor and council or the board of trustees with reference to the letting of such contract, and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the city and all property owners against any loss or damage by the negligent execution of such work. The notice shall also advise all parties interested that they may appear and protest against said proposed improvement, or any part thereof. At the time and place specified in the notice, the mayor and council or the board of trustees shall, if they find such improvement necessary and proper, award the contract to the lowest and best bidder for the work, which contract shall in no case exceed the aggregate estimate of costs submitted with the plans and specifications, and shall be subject to the right of the mayor and council or the board of trustees to reject any and all bids and to readvertise for other bids when none of the same are, in their judgment, satisfactory: provided, that where a majority of the property owners in any block petition the mayor and council or the board of trustees for a lateral sewer through or in such block, the advertising for bids shall not be necessary, but the mayor and council or the board

of trustees may cause such improvement to be made without such notice."

The city having accepted the bid of the contractors, Reed & Wheelock, and the price named in said bid not being above the estimate of the city engineer, we hold that such bid and letting thereon, in the absence of fraud or collusion, was not subject to attack.

It is also urged by the plaintiffs that the contractor knew that the estimate was greater than that allowed by law. From a careful examination of the record, we do not find any evidence supporting this contention.

The plaintiffs also urge that the costs of the mains cannot be assessed to the lots in the district, but must be borne by the city. Section 464, Revised Laws of 1910, is as follows:

"Except as herein otherwise provided, the construction and maintenance of public sanitary sewers and storm sewers in cities and towns shall be paid for as follows: Mains and submains, of whatever size or extent, shall be paid for by the city or town; laterals shall be paid for by the owners of the property abutting on such laterals, in the manner provided by law for the estimate of cost and assessments for district sewers: Provided, that where, for the purpose of better drainage, or for other reason, a main or submain shall be constructed in any alley or other place where otherwise a lateral would have been constructed, and where such main or submain serves the purpose of a lateral for the property abutting thereon, the owners of such property shall be assessed in amounts equal to that which they would have been required to pay for a sufficient lateral; and that where, for any reason, any private connection is made with a main or submain, instead of with a lateral, the owner of the premises so connected shall pay to the city or town an amount equal to that which he would have been required to pay for a lateral so constructed as to provide similar service; such amounts to be charged for connections with mains and submains or for mains or submains used as laterals to be ascertained by the city or town engineer, or the engineer in charge of such work, and assessed against the property and collected in the manner provided by law in the case of district sewers."

It appears that the natural course of drainage from this particular sewer district was into Caney river, and that a pipe was laid from said sewer district to the said Caney river in order to carry the drainage from the said sewer district. That part of the ordinance which was published in connection with establishing said sewer district is as follows:

"Section II. That it is necessary for the best interests of the inhabitants and property in said district number 14, as above defined and outlined, that a district sewer be constructed in said district and the same connected with the natural course of drainage therefrom, which is the Caney river; and that the cost thereof be assessed against all the property in said district, according to area, exclusive of highways.

"The city engineer is hereby instructed to prepare plans, sections, profiles and specifications for said work, together with a complete estimate of the cost thereof; and the city engineer is further instructed to make such plans, sections, profiles and specifications and estimate upon the basis of the adoption of the board of commissioners of the following described materials to be the following dimensions for the construction of said sewer, towit: Best quality of vitrified sewer pipe, 8, 10 and 12 inches in diameter, to be used within the confines of said sewer district, and the best quality vitrified sewer pipe 12 inches in diameter to be used for the outlet of said sewer district to the opening at the Caney river, together with all other necessary appurtenances, and report his estimate and submit such plans, sections, profiles, specifications and estimates as soon as possible."

There was no protest on the part of the property owners in proposed district No. 14 of the ordinance purporting to establish said sewer district, which provided that the drainage be carried by a pipe line to Caney river, and the work was fully completed therein by the contractors, and it was not until the assessment ordinance was passed and published that there was any complaint or protest upon the part of the plaintiffs.

This court in the case of City of Bartlesville et al. v. Keeler et al., 107 Okla. 14, 229 Pac. 450, which involved practically every question presented in this appeal and especially on the particular point here involved, said:

"The authority of municipalities to construct improvements such as here is purely statutory, and it would doubtless be accepted without controversy that, unless the statute authorized the construction of the outlet, the property could not be charged with this expense. The statute seems to have recognized a truth commonly known to all that a proper sewer system in a city is necessary, not only for the convenience, but for the health and safety of the public. It would be no system at all without proper outlet. The sewer in question is what is known to the statute as a 'district sewer,' and is authorized by sections 465, 468 and 469, R. L. 1910. Among other things, section 465 provides that—

"'District sewers shall be established within the limits of the districts, to be pre-

scribed by ordinance, and shall connect with public sewers or other district sewers, or with the natural course of drainage, as each case may be.'

"The record in the instant case fails to disclose that the Caney river outlet was not the only feasible outlet. It was and is the natural course of drainage.

"This question has been before the courts on different phases, and they sustain the proposition laid down in McQuillin on Municipal Law, vol. 4, 1434, which says:

" 'Construction of part of sewer outside of city does not change its character as a local improvement for which assessments may be made against the owners of property benefited.'

"In the case of McMurry v. Kansas City et al., 283 Mo. 479, 223 S. W. 615, this question was before the Supreme Court of Missouri, and that court concluded its discussion as follows:

" 'Therefore, if outlets, pumping stations, or local laterals, extensions, and connections are necessary, as appellant concedes, to render the sewer operative and effective, then they are as much a part of the sewer system as manholes and catch basins or any other appliance, and can be paid for in the same way as the remaining portion of the sewer.' Hall v. Sedalia, 232 Mo. 344, 134 S. W. 650; McChesney v. Village of Hyde Park. 151 Ill. 634, 37 N. E. 858; Fisher v. Chicago, 213 Ill. 268, 72 N. E. 680.

"In the case of Johnson v. Duer, 115 Mo. 366, 21 S. W. 800, the court says:

" 'The charter provides that district sewers shall connect with a public sewer or other district sewers or with the natural course of drainage. The efficacy of the sewer as a means of drainage depends entirely on this requirement of the charter. A sewer with no proper outlet would create a nuisance, instead of improving the sanitary condition of the locality. The requirement, then, is of a substantial matter, and, if not followed by an ordinance establishing a sewer, the cost of construction could not be enforced by local assessments."

We think that the facts in the instant case come fully within the doctrine laid down in the above quoted authorities.

It is also urged by the plaintiffs that the cost of construction made by the engineer was illegal and void. It appears from the evidence of the engineer, who made the survey and final estimate, that he based his estimate for the work upon a discount of 25%, which discount would be required by the purchasers of the sewer warrants. The record also discloses that this discount does not appear on the face of the estimate, and the bidders had no knowledge of the estimate being "swelled" in order to cover any loss on account of the fact that the sewer warrants would not, when sold, bring par value. The act of the city engineer in arriving at the estimate in this matter was wholly without warrant or authority. If in his judgment, he could estimate the discount at 25% and then cause the estimate to be "swelled" to make up this deficiency, he could permit a far greater allowance for such discount and "swell" his estimate to suit such convenience. The action of the city engineer in causing the estimate to be "swelled," in order to meet the contemplated discount on the warrants, is a fraud upon the taxpayers who own property within the district. Under the statute, the city engineer occupies a most sacred trust. It is upon his estimate that the city is permitted to accept a bid for the performance of the work. The contractor's bid is limited to the total estimate of the engineer, and on account of the engineer representing the city and the city becoming the official representative of the taxpayer, and as such representative enters into a contract which affects the taxpayer. And where there is no defect on the face of the estimate, and the city enters into a contract with a successful bidder, and the said contract is free from fraud and collusion, and the conditions of the statutes in reference to the formation of such district are regular, the improvements made by the contractor in compliance with his undertaking together with the necessary steps thereafterwards taken by the city in making its levy and issues its warrants against the property of the taxpayer, the same thereby becomes a fixed lien against the taxpayer's property. Therefore, the engineer, upon whom the city authorities must depend for a correct estimate, should use the greatest vigilance in rendering an estimate that is fair and honest, and should not practice any sort of deceit or cunning in order to mislead the city authorities or the taxpayers.

The injustice of such practice upon the part of the city engineer is at once seen. If a discount is required by the purchasers of the warrants, it is on account and for the reason that in some cases the amount of the assessment against the property is far in excess of what the property would bring on the market or by reason of forced sale. On the other hand, if the assessment against the taxpayer's property is less in amount than the value of the property, the last-named property of the taxpayer must be sold to contribute for the loss occasioned on account of the former property not being worth the

assessments levied against it. Therefore, the law compels one taxpayer to insure against the loss from another, which is not permissible under the law.

As said, the city engineer represents the city, and the city, in its contractual capacity, represents the taxpaying citizens of the district in which the improvements are to be made. And when the city enters into such a contract free from collusion and fraud, such contract is clothed with the same sanctity and force as that of any other legal or binding contract.

This proposition was also involved in the case of the City of Bartlesville v. Keeler, supra, and the court said:

"But the Legislature placed no limitation upon the engineer, neither did it prescribe what he should put on the estimate sheet submitted to the city authorities for their approval, but left it entirely within his own conscientious determination, and apparently its own purpose from the legislative enactment is to prohibit the city authorities making a contract which exceeds the amount of the estimate."

It being shown by the record that the contractors knew nothing of the city engineer taking into consideration the probable discount on the warrants thereafter to be issued, we are of the opinion that the plaintiffs are not entitled to recover on this contention.

The plaintiffs in error contend that the court erred in reducing the estimate of 7% made by the city engineer for expenses incurred in the work necessitated by reason of the improvements in said sewer district. Again in the case of the City of Bartlesville, v. Keeler, supra, the court said:

"Rev. Laws 1910, authorizes the city to reimburse itself the expense incurred by it in building a district sewer which is in addition to the contract price of the work. Where the amount of such cost incurred by the city is drawn in question, and after trial of the issue, a court of competent jurisdiction finds a specified sum is sufficient to reimburse the city, and the conclusion of the trial court is not clearly against the weight of the evidence, its judgment will not be disturbed."

We have read the testimony pertaining to this item, and as said in the case of Bartlesville v. Keeler, supra, it clearly appears that 7% estimated by the engineer was exorbitant. In fact the plaintiffs in their brief say:

"But, if the court should find as a matter of fact that the item for engineering fees was slightly excessive, then in view of the authorities submitted, such excess should not defeat the assessment ordinance."

We cannot look upon such matters so lightly. It must be remembered that the engineer who testified in this case admitted in the court below that he added 25% for the entire estimate for the probable discount on the warrants to be issued for said improvements.

It appears that the acts of the engineer in making the estimate were wholly in disregard of the rights of the property owners of said district, and we cannot sanction the methods here used to further burden the property owners in the district. In our judgment, the engineer's estimate fee was not only slightly excessive, but highly so. And when the said estimate for this item is taken together with the other "swelled" estimate, it is seen that the property owners are called on to pay for more than should be required. This being an equitable action and the judgment of the court on this particular item not being clearly against the weight of the evidence, the same is by this court approved.

As before stated, practically every feature of this case has been fully adjudicated and determined in former cases before this court, and finding no error in the record which would justify a reversal, the judgment is affirmed.

NICHOLSON, C. J., and PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 28 Cyc. p. 1039 (Anno). (2) 4 C. J. p. 900, § 2869; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91. (3) 4 C. J. p. 1129, § 3122.