## WILLIAM F. HALL v. CITY OF SEDALIA et al., Appellants.

In Banc, February 9, 1911.

1. **EQUITY: Suit to Declare Contract Invalid Before Performance.** Ordinarily a court of equity will not entertain a bill to construe a contract, or to declare a contract invalid, before any performance or attempt to perform or refusal to perform is shown. But in this case, which is a suit by a contractor with a city to have declared invalid a contract to construct a sewage disposal tank, on the ground that the statute which authorized the contract is unconstitutional, and in consequence the taxbills to pay the cost of construction would also be void, the court entertains the suit on the ground of the public character of the contract—but this action is not to be regarded as a precedent for suits of like character. *Held,* by WOODSON, J., dissenting, that the court cannot assume to entertain the suit except by the exercise of a power not delegated to it, and therefore ought not to entertain it at all.

2. **CONSTITUTIONAL LAW: Local or Special Law: Sewage Disposal Plant: Act of 1895.** The Act of 1895 (Laws 1895, p. 58), providing a scheme of sewer construction for all cities

of the third class which should, by vote of the people, adopt the provisions thereof, is not a special or local law within the meaning of section 53 of article 4 of the Constitution. [Following, on this point, Owen v. Baer, 154 Mo. 434.]

3. ———: Made Effective by Vote of People: Sewer Construction: Act of 1895. The Act of 1895 (Laws 1895, p. 58), providing that "in every city of the third class in this State, the acting municipal authorities thereof, upon a vote by ballot of two-thirds of the qualified voters, . . . shall have power by ordinance to provide drains and sewers," does not violate section 7 of article 9 of the Constitution declaring that "the powers of each class [of cities] shall be defined by the general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." The act is general, is complete in itself, applies to every city of the third class; and the fact that it does not become effective in any city until that city adopts it, and that one city may adopt it and another.may not, does not render it invalid.

4. ———: Drains and Sewers and Appurtenances: Local Option Law: No Readoption After Amendment Providing for Disposal of Plant. The Act of 1895 was, according to its terms, adopted by the voters of a city, and it authorized the city, after its adoption, to provide for "drains and sewers," and those words are used throughout the act, with the additional words "connections" and "appurtenances." One section provides that "sewers may be constructed and maintained with inlets, laterals, branches and appurtenances," and another that "any sewers heretofore or hereafter constructed may be changed, diminished, enlarged or extended, and shall have all the necessary laterals, inlets and other appurtenances which may be required." *Held*, that the act as it stood authorized the city to construct a sewage disposal tank, the word "appurtenances" necessarily contemplating such a plant; and the fact that the Legislature in 1909 amended the act by inserting after the words "drains and sewers," the words "and all necessary plants for the disposal of sewage," and that the act was not again adopted by the people after such amendment, does not affect the validity of any contract thereafter entered into by the city for the construction of a sewage disposal plant.

5. ———: ———: ———: ———: Legislative Construction. The amendment of 1909 may be regarded as a legislative declaration that the Act of 1905 was not broad enough to include sewage disposal plants; but the courts are not bound by an erroneous construction of the law by the Legislature. The act was broad enough to include a sewage disposal plant without that amendment.

6. ———: **Adoption of Act Also Adoption of Amendment.** When the people of the city, by the necessary vote, adopted the Act of 1895 and the sewage plan thereby provided, the city thereby became subject not only to that general law, but also to any amendments that the Legislature might thereafter enact.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

REVERSED AND REMANDED *(with directions).*

*W. W. Blain* for appellants.

The separate opinion of GANTT, C. J., in Owen v. Baer, 134 Mo. 438, was not the majority opinion of the court, so far as it held that a local option provision for classified cities created a class of cities not authorized by the Constitution. Ex parte Handler, 176 Mo. 390. This court has repeatedly held that a separate class of cities is not created by local option laws. State ex rel. v. Pond, 93 Mo. 606; Ex parte Handler, 176 Mo. 390; State v. Harp, 210 Mo. 259. It is not necessary to resubmit the proposition to a vote of the people, after an amendment of the law, that had been previously adopted. Andrews v. People, 84 Ill. 28; Commissioners v. People, 134 Ill. 170; Swett v. Sprague, 55 Me. 190; State ex rel. v. Wilcox, 45 Mo. 458.

*W. E. Owen* for respondent.

(1) The provisions of Secs. 5876 to 5893, R. S. 1899, providing that any city of the third class might operate under the power therein given, when adopted by a two-thirds vote of the qualified voters of any city of such class, are unconstitutional. Constitution, art. 9, sec. 7, and art. 4, sec. 53; Owen v. Baer, 154 Mo. 434. The opinion in the case above cited, about a sewer construction contract let by the city of Westport, which had by vote assumed to act under the au-

thority of a special sewer scheme, is in every way similar to the case here, and unless that case is flatly overruled, it is decisive of the questions at issue in this case. Appellants contend that the case cited does not hold that local option sewer provisions are in violation of section 7 of article 9, of the State Constitution, and cite the remarks of GANTT, J., in Ex parte Handler, 176 Mo. 390. Appellants are in error in overlooking the force and effect of the Baer case. While it is true that only Judges GANTT, ROBINSON and VALLIANT directly held the sewer scheme void as in conflict with section 7 of article 9 of the Constitution, yet Judge SHERWOOD, in a separate opinion, held it void, as in conflict with section 53 of article 4 of the Constitution, and Judge BURGESS concurred with him. In fact, the SHERWOOD opinion held that no proposed law could be referred to a vote of the people, to determine whether it should become operative, except in cases pointed out in the Constitution itself; and he further contended that the Constitution having provided that some matters might be submitted to the people for a vote, necessarily excluded the right of the Legislature to submit any others. And on page 447 of that case, he uses the following forceful language: "The Constitution specifically provides just when and where a vote of the people may be taken, and by so doing the framers of that instrument necessarily excluded all implication as to authority to vote being granted to the people, in any other cases than those mentioned." The conclusion then is plain, that five of the seven judges held that the sewer scheme of Westport, in litigation in that case, was unconstitutional and void; and such must be the holding in this case, unless the court decides no longer to abide by the holding in that case.

(2) Even if the sewer sections referred to be held valid and constitutional, yet the amended Laws of 1909, did not by their terms confer the enlarged pow-

ers therein given to cities that had theretofore voted to adopt the scheme set out in said sections of the statutes. It seems to be prospective and not retrospective in operation. Laws 1909, p. 293. Assuming that Sedalia had legally adopted the provisions of Revised Statutes 1899, from 5876 to 5893, inclusive, it was only vested with the essential powers therein given, and the people in voting endowed the city with only the specified powers. In that act there was no provision for construction of a sewage disposal plant and the purchase of land for same; that power was created alone by the Amendment of 1909, and nowhere in that amendment does it mention that cities of the third class which had theretofore adopted the provisions of statutes amended, should have the additional power therein given.

FERRISS, J.—This case comes here by appeal from the circuit court of Pettis county, where judgment was rendered in favor of respondent on May 21, 1910. The case arises upon the following facts:

The respondent, plaintiff below, entered into a written contract in March, 1910, with the city of Sedalia for the construction of a sewage disposal plant, and for the construction of sewer mains to be connected therewith, at a total cost of $36,000, and as security for the performance of such contract, plaintiff gave bond to the city in the sum of $8000. Before work was begun plaintiff was advised by counsel that the act of the Legislature under which the city was proceeding to erect this disposal plant was unconstitutional and void, and that the special taxbills that should be issued to the plaintiff in payment for the work done under his contract would not constitute a valid lien on the property in the district, and could not be collected by law; whereupon plaintiff filed his bill in equity praying the court to cancel, annul, and declare

wholly null and void plaintiff's aforesaid contract and bond. Issues were made up, the case was tried by the court, and judgment rendered for plaintiff granting the relief prayed for. Due proceedings were had, and the case comes here by appeal.

Two questions arise upon the record:

1. It is contended by the plaintiff that the act of the Legislature passed in 1895 (Laws 1895, p. 58), providing a scheme of sewer construction for all cities of the third class which should, by a vote of the people, adopt the provisions of such act, violates section 7, article 9, of the Constitution, which provides that the powers of each class shall be defined by general laws, "so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions," in that it permits certain cities, voting affirmatively, to acquire powers which are not common to all cities of the third class; and that it also violates section 53 of article 4, which forbids the General Assembly to pass any local or special law. This contention is based upon the case of Owen v. Baer, 154 Mo. 434.

2. It is also contended that even if the Act of 1895 is held to be constitutional, yet the contract in question is invalid because the power granted to the city to erect a disposal plant was not in the original act as voted upon by the people, but was granted by an amendment to that act made by the Legislature in 1909, which amendment had never been submitted to or voted upon by the people, and that therefore the enlarged powers given to the city by such amendment were not in force and effect, and could not be made effective without an affirmative vote by the people.

I. Upon the threshold of this case arises the question whether a court of equity will entertain a bill to construe a contract, or to declare a contract invalid,

before any performance or attempt to perform is shown. If a man makes a contract, and afterwards before beginning a performance, doubts its validity, he has his legal remedy. He may decide either to perform or refuse to perform, and take his chances in a court as to results. If this were a contest between individuals over a matter of private interest only, it would be a serious question whether the court would entertain the case at all. In view, however, of the public character of the contract in question, and in further view of the fact that the law invoked in this case cannot be regarded as being satisfactorily settled by the former decisions of this court, we have decided to pronounce judgment upon the questions involved; our action, however, not to be regarded as a precedent for suits of this character.

II.   Constitutional questions of the character of those involved in the present case have been frequently before this court. They received a full discussion in Owen v. Baer, 154 Mo. 434. That case arose upon the Act of 1893 (Laws 1893, p. 101), which provided that "in every city in this State, of either the third class or of the fourth class, the acting municipal authorities thereof, upon a vote by ballot of two-thirds of the qualified voters," etc., "in favor of adopting the provisions of this act, shall have power by ordinance to provide drains and sewers for the same," etc. The aforesaid act is similar to the Act of 1895 in question, so far as the questions raised are concerned. Westport, a city of the fourth class, proceeded under said act to construct a sewer system, and issued taxbills in payment thereof, and Owen v. Baer, supra, was a suit to cancel certain of these taxbills upon the ground that the act was in violation of section 7 of article 9, and section 53 of article 4, of the Constitution; presenting questions similar to those in the case

at bar.  Three judges In Banc, GANTT, C. J., and ROB-
INSON and VALLIANT, JJ., held the Act of 1893 to be in
violation of section 7 of article 9, upon the ground that
this act enabled some cities of the fourth class to ac-
quire powers not possessed by other cities of that class;
that it created, in the language of Judge GANTT, who
wrote the opinion, "a dissimilarity in the powers of
cities of the fourth class."

Judge SHERWOOD, in a separate opinion, Judge
BURGESS concurring, held that the act was unconstitu-
tional because it was not within those specific provis-
ions of the Constitution which Judge SHERWOOD said
provided "just when and where a vote of the people
may be taken."

Judge MARSHALL, in a separate opinion, held that
the act was a valid one, violating no provision of the
Constitution, and that the bill of plaintiff should be
dismissed.  Judge BRACE concurred with Judge MAR-
SHALL upon the proposition that the act did not violate
section 7 of article 9.

Five of the judges concurred in holding the  act
invalid; three upon one ground; two upon another and
different ground, and one upon a ground which does
not appear.

The decision in Owen v. Baer settled that case,
but it did not establish the judgment of this court
upon the main proposition involved in the case at
bar; that is, that the act violates section 7 of article 9
of the Constitution.

The respondent contends, first, that the Act of
1895, now sections 9281 to 9298 inclusive, Revised Stat-
utes 1909, violates section 53 of article 4 of the Con-
stitution, in that it is a local or special law; second, that
it violates section 7 of article 9, in that it enables some
cities of the fourth class to acquire powers not pos-
sessed by all the cities of that class.

These two propositions were presented in the

Owen-Baer case. Upon the first proposition the separate opinion of Judge GANTT accepted the holding of Judge MARSHALL. Hence, a majority of the court agreed that the act did not violate section 53. of article 4. That proposition may be regarded as settled.

As the second proposition received the approval of only three members of the court, it remained open so far as the case of Owen v. Baer goes, and so far as we are advised, is still an open question in this State.

The act in question provides: "In every city of the third class in this State, the acting municipal authorities thereof, upon a vote by ballot of two-thirds of the qualified voters," etc., "shall have power by ordinance to provide drains and sewers," etc.

Does this act violate section 7 of article 9 of the Constitution, which provides that "the power of each class [of cities] shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions?" The act in question is complete in itself, and is uniform in its application to cities of the third class, and comprehends all cities of that class. Whether the law shall come into operation in any particular city depends upon a contingency, namely, an affirmative vote of the people of such city. But this applies to each and every city in the class. The law extends the same right, the same privilege, to each city in the class, and is therefore uniform. It is, in the language of the Constitution, a "general" law, and under it all the cities of the same class, as required by the Constitution, "possess the same powers" and are "subject to the same restrictions."

In passing upon the constitutionality of this law, we must look at it as it leaves the Legislature. Is it complete, effective, and universal in its application to cities of the third class? Does it give a privilege or

power to one which it denies to another? Does it impose restrictions upon any that do not apply to all? That the law does not take effect in any particular city until the people vote a desire for its application does not, in our opinion, affect the character of the law itself, provided that it may take effect in the same way and under the same conditions in every other city of the same class. As was said by WAGNER, J., in State ex rel. v. Wilcox, 45 Mo. 458, "The proposition cannot be successfully controverted that a law may be passed to take effect on the happening of a future event or contingency. The future event—the happening of the contingency, or the fulfillment of a condition—affords no additional efficacy to the law, but simply furnishes the occasion for the exercise of the power." To the same effect is the reasoning of this court in the case of the Township Organization Law, 55 Mo. 295. The court had under consideration an act which provided: "This act shall apply to and be in force in all counties adopting the act to provide for township organization, and takes effect from and after its passage," and held it to be constitutional. The court said: "It is a general law made for the whole State, and by the terms of the act itself took effect from and after its passage. Every county in the State may avail itself of the privileges offered by this law by a majority vote of its people. . . . If a majority vote for it, such vote does not create the law, but places the county so voting within its provisions."

Certainly, the validity of the law cannot depend upon whether one or all the cities choose to exercise the power which the act confers upon all. This act gives the same power to all the cities of the class. It does not confer one sewer system upon some of the citizens and another system upon others; but all the cities have the same power to adopt the same sewer

232 Sup—23

system. The possession of the power does not depend upon its exercise; it depends upon the general law, which is in force equally upon all cities of the class, whether or not it is invoked.

An admirable review and discussion of the decisions of this court, as well as of the law elsewhere, pertaining to this question, is found in the exhaustive opinion of Judge MARSHALL in the Owen-Baer case, supra. That opinion may be resorted to for the learning on this subject.

It is the judgment of this court that the act in question is constitutional and valid.

III. A further question is presented in this record—one not hitherto before the court. It arises concerning an amendment made in 1909 to the aforesaid Act of 1895.

The situation is this: On April 1, 1902, the people of Sedalia, by an affirmative vote sufficiently large, adopted the provisions of the Act of 1895. At that time the act, in its first section, authorized the city, after the adoption of the act by the people, to provide "drains and sewers," and throughout the subsequent sections these words, "drains" and "sewers," are used with the additional words "connections" and "appurtenances."

So the law stood when the people of Sedalia adopted its provisions. In 1909 the law was amended by inserting after the words "drains and sewers" the additional words "and all necessary plants for the disposal of sewage;" and so the law stood when, without further vote by the people adopting this amendment, this contract was entered into by respondent to construct a disposal plant for sewage and connecting mains therewith.

It is claimed by respondent that the amendment of 1909 did not confer upon cities which had thereto-

fore voted to adopt the sewer scheme as set out in the Law of 1895, the enlarged powers given by such amendment to erect disposal plants, and that such enlarged powers could be acquired only by an affirmative vote of the people accepting the amendment. It is argued that the people, while willing to adopt a sewage scheme involving drains and sewers only, might refuse to approve one involving the increased expense of a disposal plant.

In our opinion, the right of the city of Sedalia to construct a disposal plant does not depend on the amendment of 1909. Section 1 of the original act provides for "sewers and drains" and "connections therewith." Section 2 provides that "sewers may be constructed and maintained with inlets, laterals, branches and *appurtenances.*" Section 15 provides that "any sewers heretofore or hereafter constructed may be changed, diminished, enlarged or extended, and shall have all the necessary laterals, inlets and other appurtenances which may be required."

The contract in question is based upon an ordinance of the city authorizing an enlargement and extension of the sewer system by adding thereto a disposal plant in the shape of the septic tank and mains connected therewith. A sewer system without a place to dispose of the contents would be useless. A septic plant for such disposition, with its connections, would be naturally appurtenant to, if not an integral part of, the system. The amendment of 1909, with its emergency clause, may be regarded as a legislative declaration that the original act was not broad enough to include disposal plants, and as such it is entitled to respectful consideration. We do not find that this amendment was occasioned by any ruling of this court holding the original act insufficient. The amendment was made, perhaps, to settle any question of doubt. However that may be, we are not bound by an erro-

neous construction of the law by the Legislature. [State ex inf. v. Goffee, 192 Mo. l. c. 688.] If, as a matter of law, the Act of 1895 authorized the construction of the plant in question, the fact that the Legislature erroneously regarded the act as insufficient, or doubtful, would not make it so. Furthermore, we are of the opinion that when the city adopted the Act of 1895 and the sewage plan thereby provided, it subjected itself to the general law then in force, and also to any amendments that the Legislature might thereafter enact.

In accordance with the foregoing views, the judgment is reversed and the cause remanded, with instructions to dismiss the bill.

All concur, but *Valliant, C. J.,* who is absent, and *Woodson, J.,* who dissents.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the first paragraph of this opinion, for the reason that there is no equity in the bill. The opinion itself concedes this fact; but notwithstanding that fact, this court entertains the appeal and adjudicates the cause upon its merits as though a court of equity had jurisdiction of the same.

The only excuse offered for this anomalous proceeding is found in the bare statement of the opinion that it is not to be taken as a precedent.

Notwithstanding that statement, it is a precedent, or rather it will become so just as soon as the opinion is handed down; and must be followed when a like case is presented, or it must be overruled. If overruled, which the opinion intimates will be done when another case of like character is presented, then this court will justly be charged with partiality and discrimination. If, upon the other hand, the opinion should be

followed, then it violates all equitable procedure, and also violates that provision of the Constitution which guarantees the right of trial by jury simply by a court of equity assuming jurisdiction of an action at law. The latter is triable before a jury, while the former is triable before the court; but this opinion with one stroke of the pen strikes out the right to a trial by jury. While it is true that point was not raised by counsel, however it is in the case, and the court has raised the point itself only to brush it aside as so much chaff, and if adhered to must deny that valuable right to the next comer.

This opinion, like many others found in the books, shows the greatest danger which threatens the perpetuity of all forms of government, namely: the seeming necessity for the lodgment of absolute and final power in some individual officer or officers, who assume and exercise powers not delegated to them by the law, and yet there is no remedy because of said final and absolute power.

That excessive exercise of power is the rock upon which the ship of state of all nations has been or will be wrecked, and it will just as surely wreck those of the present and future nations as it has wrecked those of the past. The only salvation there is, if any, from wreck and ruin, rests with a wise pilot who will steer the ship clear of the breakers by wisely exercising only the powers entrusted to him within the true spirit and meaning of his grant of power.

A court has no more legal or moral right to exercise power in excess of its true jurisdiction simply because of its unrestrained physical power than an individual has to violate the laws of the land simply because he has the physical power to so do. The difference being, the latter's conduct is subject to review, while the former's is not. In the long run, however, the disastrous results of the former will be more detri-

mental to society than that of the latter.    The one wrecks governments, while the other ruins individuals.

This case within itself may be of little importance, but when considered in connection with the jurisprudence of a great State it may at some future time cut an important figure. As was said by Napoleon in speaking of the Russian War, "No events are trifling with regard to nations and sovereigns, for their destinies are controlled by the most inconsiderable circumstances." He then went on to state what trivial things brought about the war, which ultimately involved all Europe, and finally resulted, if I remember correctly, in his downfall at Waterloo.

It is just such opinions as this that upset and keep the law in an unsettled condition, and render its administration difficult and uncertain, and lay the foundation for further usurpation.

I express no opinion as to the other paragraphs