EDWARD L. DUDLEY *vs.* CITY OF CAMBRIDGE & others.

Middlesex.    May 4, 1964. — June 1, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Fireman. Municipal Corporations,* By-laws and ordinances, Employees.
*Statute,* Acceptance.

After acceptance in 1950 by a city of G. L. c. 48, § 58B, providing that
the weekly hours of duty of firemen "shall be . . . established by the
. . . officers having charge of fire fighting," an ordinance passed by the
city council in 1955 purporting to fix the weekly hours of duty of fire-
men was beyond the authority of the council and was invalid; § 58B
was not superseded or repealed by c. 40, § 21A, inserted by St. 1951,
c. 798, § 5, authorizing a city to establish "by ordinance . . . the hours,
days and weeks of work . . . for any or all employees."    [544–545]

In a city which in 1950 had accepted G. L. c. 48, § 58B, then providing
for fixing of the weekly hours of duty of firemen by the "officers having
charge of fire fighting," § 58B as revised by St. 1957, c. 713, § 1, pro-
viding for establishment of firemen's weekly hours of duty "by ordi-
nance," had not become effective in 1958 where it had not been accepted
by submission to the voters of the question set forth in § 1 of the 1957
statute; § 58B in its earlier form, whose acceptance was affirmed by
§ 2 of the 1957 statute, remained in effect and rendered invalid an
ordinance passed by the city council in 1958 purporting to fix the
weekly hours of duty of firemen.    [545–546]

In a suit in equity by a fireman for a declaratory decree, a finding by
the trial judge that the "work schedules [for firemen] established by
the Chief of the Fire Department [of the defendant city] . . . con-
stitute a practical and workable plan for the implementation of the
intent and purpose of" G. L. c. 48, § 58B, as inserted by St. 1945,
c. 413, in effect in the city and providing that firemen's average weekly
hours of duty should not exceed forty-eight in number, was not plainly
wrong where it appeared that the work schedules established gave to
each fire fighter an average forty-eight hour work week.    [547]

In a suit in equity by a fireman for a declaratory decree, a finding by the
trial judge that holiday pay for firemen established by the defendant
city complied with G. L. c. 48, § 57D, accepted by the city and pro-
viding for holiday pay of one-fifth of a fireman's regular weekly salary,
was clearly correct.    [547]

BILL IN EQUITY filed in the Superior Court on February 5,
1962.

The suit was heard by *Sgarzi,* J.

*John F. Killeen* for the plaintiff.

*Richard D. Gerould,* City Solicitor, for the defendants.

KIRK, J.   The plaintiff, a permanent member of the uniformed fire fighting force of the city of Cambridge (the city), seeks declaratory relief against the city, the city manager, and the chief of the fire fighting force.   The bill, which contains sixty-four paragraphs of allegations and twelve prayers for relief, comprises fifteen pages of the printed record.   The bill is so prolix in content, diffuse in language, and obscure in purpose as clearly calling for a demurrer.   Neither the Superior Court nor this court should be taxed with such circumlocutory pleading.   The city, however, undertook to answer to the merits.   Our understanding of the issues is aided greatly by the terse finding of material facts and rulings of law made by the judge.   The evidence is reported.   The plaintiff appeals from a final decree which resolved all issues against him.

In the main the plaintiff seeks a determination of his rights with respect to hours of duty and holiday pay.   Involved in this determination is the validity of two ordinances passed by the city council.   In turn, the validity of the ordinances depends upon whether the city is bound by certain enactments of the Legislature under which the city council purported to act in voting the ordinances.

We first consider the validity of ordinance 508 passed by the city council on September 26, 1955, which provided "[n]o member of the fire department shall be required to perform a regular tour of duty of more than forty-two hours in any seven day period."   At the time ordinance 508 was passed, however, the provisions of G. L. c. 48, § 58B, inserted by St. 1945, c. 413, having been accepted by the voters of the city on November 7, 1950, were in effect.   The statute provided in substance that the average weekly hours of duty of the permanent members of the uniformed fire fighting force "shall be . . . established by the . . . *officers having charge of fire fighting*" and "shall not exceed forty-eight in number" (emphasis supplied).   The judge, therefore, was correct in his determination that ordinance 508 was without legal effect because the city council under the effective statute was without authority to deal with the subject matter.

This conclusion is not, as argued, affected by G. L. c. 40, § 21A, inserted by St. 1951, c. 798, § 5, which provides that a city "by ordinance, unless repugnant to the charter of such city, may establish the hours, days and weeks of work . . . *for any or all employees* of such . . . city . . ." (emphasis supplied). Notwithstanding the broad terms of G. L. c. 40, § 21A, we perceive no legislative intent, express or implied, that it should supersede or repeal the provisions of G. L. c. 48, § 58B. Strong terms are required to show such an intent. *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 713–714, and cases cited. This would seem to be especially true when the Legislature has made fire fighters, as distinguished from municipal employees in general, the subject of a somewhat elaborate statutory scheme with respect to hours of duty and related conditions of employment. G. L. c. 48, §§ 56, 57, 57A, 57D, 58A, 58B, 58C, and 59.

The plaintiff next urges upon us the validity of ordinance 593, voted by the city council on June 23, 1958. The ordinance is phrased in precisely the same language as ordinance 508 which we have already considered. He bases his contention upon St. 1957, c. 713, which amended G. L. c. 48 by striking out § 58B as it theretofore read and inserting a new § 58B. We have set out in the footnote the full text of St. 1957, c. 713, indicating new language in italics.[1] The

---

[1] "Section 1. Chapter 48 of the General Laws is hereby amended by striking out section 58B, as most recently amended by chapter 151 of the acts of 1955, and inserting in place thereof the following section: — Section 58B. The hours of duty of the permanent members of the uniformed fire fighting force in every city and town in which this section is accepted as hereinafter provided shall be so established by the fire commissioner, board of fire commissioners, chief engineer, board of engineers, or other officers having charge of fire fighting that the average weekly hours of duty in any year, other than hours during which such members may be summoned and kept on duty because of conflagrations, shall not exceed forty-eight in number; *provided, that, except in cities and towns subject to section fifty-nine, any city by ordinance and any town by by-law may establish such average weekly hours of duty at less than forty-eight hours.* Sections fifty-six, fifty-seven, fifty-eight A and fifty-nine shall not apply to the permanent members of the uniformed fire fighting force in any such city or town.

"Upon petition of not less than ten per cent of the registered voters in any city or town, duly certified by the registrars of voters and filed with the state secretary not less than sixty days before any state election, the state secretary shall cause to be printed upon the official ballot to be used in such city or town at such state election the following question: 'Shall section fifty-eight B of

judge ruled that ordinance 593, purporting to reduce the hours of duty of fire fighters to forty-two, in so far as it depends for its validity on St. 1957, c. 713, was without legal effect because St. 1957, c. 713, had never been accepted by the city. The judge was right. A fair reading of St. 1957, c. 713, reveals two aspects which support this conclusion. As to the first aspect, § 1 of St. 1957, c. 713, by its own explicit terms makes acceptance by the voters of a city of all its provisions, including the proviso, a condition precedent to its becoming effective. The question incorporated in § 1 for submission to the voters clearly refers to the § 58B in which it appears and not to the § 58B which had been struck. This question, which is prospective in purpose, has never been submitted to the voters of the city. Consequently, the provisions of the new § 58B have never been accepted by it. As to its second aspect, § 2 of St. 1957, c. 713, in effect affirms the "acceptance heretofore made" by the city of § 58B as it read on November 7, 1950. It is, therefore, the latter statute by which the city is bound. Under it the city council was without power to deal with the subject matter of ordinance 593, and its vote on June 23, 1958, was a nullity.

Our view is confirmed by a consideration of the serious effects of a different result: the final determination of the hours of duty would be shifted from the executive to the legislative branch of the municipal government because the new statute limits the maximum number of hours of duty which may be established by the officers in charge but prescribes no minimum to which they may be reduced by the city council; upon a reduction in hours a number of additional fire fighters would be required to provide the same protection at a substantial additional cost to the city. We think that the Legislature did not intend that such a considerable change should be imposed without consent upon a city which had already accepted a legislative plan providing

chapter forty-eight of the General Laws, providing for a forty-eight hour week for permanent members of fire departments, be accepted?' If a majority of the votes cast on said question in any city or town are in the affirmative, this section shall take effect in such city or town ninety days thereafter.

"*Section 2. Nothing in this act shall be construed as operating to rescind acceptance heretofore made in any city or town.*"

for a different administration of its fire fighting force.   See
*Wayne County Prosecuting Attorney* v. *Highland Park*, 317
Mich. 220.   Cf. *Chapman* v. *Adams*, 210 Mo. App. 680, 687;
*Emanuel* v. *Sproat*, 136 N. J. L. 154, 156.

Two questions remain: The judge found that the "work
schedules established by the Chief of the Fire Department
. . . for the uniformed firefighting force of said City con-
stitute a practical and workable plan for the implementation
of the intent and purpose of" G. L. c. 48, § 58B.   This find-
ing cannot be said to be wrong.   The work schedules estab-
lish seven fire fighting groups which rotate on day shifts of
ten hours and night shifts of fourteen hours, giving to each
fire fighter an average forty-eight hour work week, and thus
comply with the requirements of the statute.

The last question relates to holiday pay.   The city ac-
cepted G. L. c. 48, § 57D, inserted by St. 1962, c. 517, which
provides that if a fire fighter's work schedule requires him
to work on a holiday or if his regular day off or vacation
day falls on a holiday and he cannot get an additional day
off, he shall be entitled to an additional day's pay which
"shall be one-fifth of his regular weekly salary."   The city
auditor testified that the plaintiff's holiday pay for 1963
was computed on the basis of one fifth of his regular weekly
salary.   The finding of the judge that the provisions for
holiday pay comply with G. L. c. 48, § 57D, is clearly correct.

We do not consider the plaintiff's rights, if any, under
§ 57A which was apparently operative in the city in June,
1954, until the acceptance of § 57D.   The judge correctly,
by implication, declined to consider them.   Section 57D ex-
pressly makes § 57A inapplicable to the city.   Further, the
bill does not sufficiently allege and the record does not suf-
ficiently disclose the existence of an actual controversy be-
tween the plaintiff and the city with respect to § 57A.   Nor
does the evidence permit the establishment of facts which
could be the basis for a decree terminating a controversy
relating to § 57A if, indeed, one exists.   G. L. c. 231A, §§ 1
and 2.

*Decree affirmed.*