GEORGE M. McDONOUGH *vs.* CITY OF LOWELL.

Middlesex.    January 6, 1966. — February 7, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Statute,* Acceptance.    *Municipal Corporations,* Employees.    *Words,* "Currently in effect."

An acceptance of a statute by a municipality cannot be revoked by it unless a revocation is authorized by the Legislature.    [216]

In St. 1951, c. 245, providing in effect that upon its acceptance by a city employing certain engineers the city shall pay such engineers salaries in accordance with the remuneration plan "currently in effect" for comparable engineers employed in the State Department of Public Works, the words "currently in effect" do not refer solely to the State remuneration plan as in effect at the time of the city's acceptance of the statute but refer also to the plan as it may be amended and in effect from time to time thereafter.    [217]

BILL IN EQUITY filed in the Superior Court on October 9, 1964.

The plaintiff appealed from a final decree entered after hearing by *DeSaulnier, J.*

*Robert P. Sullivan* for the plaintiff.

*Cornelius T. Finnegan, Jr.,* City Solicitor, for the defendant, submitted a brief.

CUTTER, J.    McDonough by this bill, the allegations of which have been admitted, seeks a declaration concerning the effect of the Lowell city manager's acceptance of

St. 1951, c. 245,[1] on October 22, 1963. Lowell is a city having a population of more than 50,000.

Upon acceptance of the act, Lowell "adopted the remuneration plan, grade for grade, currently in effect for civil engineers and inspectors in the employ of the State Department of Public Works." On October 31, 1963, by St. 1963, c. 775, which contained an emergency preamble, the State remuneration plan was revised to provide greater compensation than that paid to comparable State employees on October 22, 1963. McDonough, Lowell's deputy commissioner for engineering (employed under civil service regulations, class twenty-seven), has requested the city to pay salary to him in accordance with the October 31, 1963, amendments of the State plan. The city has refused to do so.

The trial judge concluded that the words "currently in effect" in c. 245, § 1 (fn. 1), mean the State remuneration plan in effect when the city manager accepted c. 245 on October 22, 1963, and not the salaries from time to time payable under the State remuneration plan as and if amended thereafter. See e.g. St. 1963, c. 775. The final decree made a declaration to this effect. McDonough appealed.

1. The term "remuneration plan . . . currently in effect" in St. 1951, c. 245, § 1 (fn. 1), is susceptible of various possible meanings.[2] It is not likely, nor does it appear to be contended, that it means the remuneration plan in effect in 1951, when c. 245 was enacted. The words could reasonably be interpreted, however, as referring either (a) to the plan in effect on October 22, 1963, when Lowell accepted

---

[1] Section 1 of c. 245 reads, "Notwithstanding any contrary provisions of general or special law, any city having a population of fifty thousand or more, except . . . Boston, which employs civil engineers under the civil service regulations, class twenty-seven, and which accepts this act . . . shall adopt the remuneration plan, grade for grade, *currently in effect,* for civil engineers and inspectors in the employ of the state department of public works" (emphasis supplied). Section 2 provides, "This act shall become effective . . . upon its acceptance . . . in cities having a city manager, by such manager."

[2] No assistance in interpretation is furnished by the legislative history of c. 245. See 1951 House Bill No. 1455; 1951 House Journal, pp. 868, 897, 919; 1951 Senate Journal, pp. 690, 714, 732, 752, 790.

c. 245, or (b) to the State remuneration plan, as amended from time to time after Lowell's acceptance of c. 245, in effect for the time being, for its department of public works.   The trial judge agreed with the city's contentions and adopted the former of these last two possible interpretations.   McDonough argues that the latter interpretation is correct.

2.   Various considerations may shed light upon the meaning of the ambiguous language.   Lowell, once it had accepted c. 245, could not rescind its acceptance without express statutory authorization to do so.   No such authorization is to be found in c. 245.   *Brucato* v. *Lawrence,* 338 Mass. 612, 615–616.   *Oleksak* v. *Westfield,* 342 Mass. 50, 52–53.   In *Dudley* v. *Cambridge,* 347 Mass. 543, 544, we dealt with a complex situation involving a statute, later amended, which was subject to local acceptance.   We there held that, after Cambridge had accepted the unamended statute, it was beyond the power of its city council to adopt an ordinance inconsistent with the accepted statute.[3]   To the extent that the *Dudley* case is applicable in the present situation, it suggests that, if the "remuneration plan . . . currently in effect" means the remuneration plan in effect on October 22, 1963, then by accepting c. 245 on that date, Lowell would have foreclosed any later amendment of its pay scheme by ordinance.   The consequence would be that salary scales for civil engineers in Lowell would be frozen until and unless subsequent legislation permitted a change in those scales.

In those cities which accepted c. 245, certain civil engineers were to be placed, for a time at least, on the same remuneration plan as comparable engineers employed in the State department of public works.   This consequence of acceptance gives some indication of one probable purpose of the statute.   It is a reasonable inference that the State department and the larger cities are to a degree in

---

[3] We also held in effect (pp. 545–547) that acceptance of the unamended statute (G. L. c. 48, § 58B, inserted by St. 1945, c. 413) did not constitute acceptance by the city of the statute as later amended by St. 1957, c. 713.

competition for the same types of engineers.  If the State agency is able to pay more to civil engineers than the large cities, the quality of civil engineers in the cities' service performing similar public duties may decline.  Certainly any substantial pay differential, in favor either of the State or of the cities, will lead to dissatisfaction and agitation for equal treatment.  To construe "remuneration plan . . . currently in effect" as binding an accepting city to the particular State remuneration plan in effect on the date of acceptance would inevitably result in a differential if the State plan should be later changed.  It would also result in differentials among cities if cities successively should accept c. 245 at different times when different State plans were in effect.  It seems unlikely that c. 245 was intended to bring about such differentials.

3.  On balance, we conclude that the legislative purpose was to have cities which might accept c. 245 bound thereafter by the State remuneration plan (as amended from time to time) in effect for the time being.  This would result in having comparable civil engineers of the State and such of its larger municipalities as accept c. 245 remain at all times on the same remuneration basis.  It would avoid tying a city which accepted c. 245 to an outdated plan if the State plan should be changed after the acceptance.

4.  The present facts seem to us unlike the situation considered in the later part of the *Dudley* case, 347 Mass. 543, 545–547 (fn. 3, *supra*), where Cambridge had accepted G. L. c. 48, § 58B, in one form but had not accepted it as amended in 1957 (see fn. 3).  The words "currently in effect" do not appear in § 58B either prior to or after 1957.  In c. 245, if they refer to the State remuneration plan in effect from time to time, they constitute a consent in advance, by each city accepting c. 245, to each subsequent change in the State remuneration plan.

*Rhymer* v. *Government of the Virgin Islands,* 176 F. Supp. 338, 341 (D. Vir. I.), somewhat relied upon by the city, discusses the word "currently" as used in a context wholly different from that of c. 245.  See *Imperial Motorcar Co.*

v. *Skinner,* 16 Ala. App. 443, 444, which is consistent with the view which we take.

5.  The city contends that our interpretation would interfere with the orderly planning of the annual city budget. See G. L. c. 44, § 32 (as amended through St. 1941, c. 473, § 2; later amended by St. 1953, c. 79). This contention presumably is based upon the possibility that the salaries of city civil engineers might change during the year by reason of a change in the State remuneration plan. We think that any administrative difficulty could be met by the submission of a special recommendation, pursuant to § 32 (2) as amended, of an appropriation for such increased salaries, which could be voted by the city council, if "not in excess of the amount so recommended, either prior or subsequent to the passage of the annual budget." As to the obligation of the city to make appropriations in somewhat comparable situations, see *Minnie* v. *Chicopee,* 344 Mass. 743, 747, and cases cited.

6.  The final decree is reversed. A new final decree is to be entered, declaring that McDonough, while he remains employed by the city in a position subject to a remuneration plan referred to in St. 1951, c. 245, § 1, and while the city remains subject to that section, is entitled to receive the salary payable to a civil engineer or inspector of his grade employed by the State department of public works.

*So ordered.*