CLIFFORD J. BROOKS & others *vs.* SCHOOL COMMITTEE OF GLOUCESTER.

Essex.    February 11, 1976. — February 25, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Municipal Corporations,* Collective bargaining, Group insurance, Allocation of insurance premiums. *Group Insurance Commission. Insurance,* Group, Allocation of premiums. *Statute,* Construction.

General Laws c. 32B, § 7A, as appearing in St. 1968, c. 100, § 1, did not require a municipality which paid seventy-five percent of health insurance premiums for its firemen and policemen to pay the same percentage of health insurance premiums for its teachers. [160-161]

In construing G. L. c. 32B, § 7A, as appearing in St. 1968, c. 100, § 1, this court did not consider memoranda issued by the executive secretary of the Group Insurance Commission as an administrative interpretation of the statute. [161-163]

---

BILL IN EQUITY filed in the Superior Court on November 27, 1972.

The suit was heard by Bennett, J.

The case was submitted on briefs.

Jeffrey M. Freedman for the plaintiffs.

H. Sage Walcott, City Solicitor, for the defendant.

GOODMAN, J. This is an appeal by the plaintiffs, officers and members of the Gloucester Teachers Association, from a judgment, entered on an agreed statement of facts (submitted prior to the new rules of civil procedure); the plaintiffs contend that they are entitled to reimbursement of the difference between fifty percent and seventy-five percent of certain insurance premiums. These premiums were paid during the period between September 1, 1972, and August 31, 1973, for group hospital, surgical, and medical insurance purchased by the city of Gloucester for its employees (see Municipal Light Commn. of Taunton v. State Employees' Group Ins. Commn. 344 Mass. 533, 536 [1962]) pursuant to G. L. c. 32B, entitled "Contributory Group General or Blanket Insurance for Persons in the Service of . . . Cities . . .." Fifty percent of the applicable premiums was paid by the city (the other fifty percent having been paid by the plaintiffs) pursuant to G. L. c. 32B, § 7, which provides that the city and its employees each pay fifty percent of the premium; and (possibly, though it is not clear) as provided in a collective bargaining agreement between the plaintiffs and the school committee.[1] During this same period the city paid seventy-five percent of the comparable premiums for its firemen and policemen (who paid only twenty-five percent) under a collective bargaining agreement, effective September 1, 1972, the city having on January 20, 1972, accepted G. L. c. 32B, § 7A, inserted by St. 1968, c. 100, § 1 (sometimes referred to herein as the 1968 statute). This statute pro-

---

[1] The plaintiffs' "new contract" — executed after the plaintiffs' petition was filed, on November 27, 1972, in the Superior Court — provided for payment by the city of seventy-five percent of the premiums.

vided that a city "may ... make payment of a subsidiary or additional rate ... which shall result in the governmental unit making payment of more, but not less, than fifty per cent of the total monthly cost for such insurance."

The plaintiffs argue that they were entitled to have the same percentage of their premiums paid by the city as was paid for the firemen and policemen. They contend that they were entitled to the same treatment under the 1968 statute which, they argue, continues the uniformity in G. L. c. 32B, § 7, and was "clarified" by the provision added by St. 1973, c. 789, § 1.[2]

However, we are rather persuaded by a different analysis. Section 7, which provides uniformly for payments by insured employees of fifty percent of their premiums, was adopted in 1955 (St. 1955, c. 760), long before the adoption of G. L. c. 149, §§ 178G-178N, which provided for collective bargaining by municipal employees "with respect to wages, hours, and other conditions of employment" (G. L. c. 149, § 178I),[3] a phrase which includes the payment of insurance premiums. See *Kerrigan* v. *Boston,* 361 Mass. 24, 26-28 (1972), and cases cited. The collective bargaining statute was passed in 1965 (St. 1965, c. 763, § 2), and we believe it should be construed in harmony with the 1968 statute. *Mendes* v. *Taunton,* 365 Mass. 109, 114 (1974). Thus construed, the former permits collective bargaining by the city (or other governmental unit) about the payment of insurance premiums with different employee associations and thus with possibly different results, unless such bargaining is inhibited, as it would be, by a clear requirement of uniformity in § 7A.[4] We find no such

---

[2] Statute 1973, c. 789, § 1 (sometimes referred to herein as the 1973 statute), added the following phrase in G. L. c. 32B, § 7A: "No governmental unit, however, shall provide different subsidiary or additional rates to any group or class within that unit."

[3] Statute 1973, c. 1078, repealed G. L. c. 149, §§ 178F-178N, inclusive, and inserted a new statute as G. L. c. 150E, effective July 1, 1974.

[4] It is of course possible, even with a statutory requirement of uniformity, that one bargaining group of employees could contract for payment by a city of a percentage of premium greater than the pre-

requirement expressly constraining the flexibility and scope of collective bargaining; indeed, the plaintiffs concede that "the 1968 version of § 7A was silent on the question presented in this case."

Further, by the 1973 statute (see fn. 2), the Legislature seems to have placed the added sentence requiring uniformity in juxtaposition to the earlier provision to indicate a contrast. This would appear to be the conventional function of "however" in a statute. The implication is that the 1973 Legislature read the 1968 statute as permitting inequality, which it then decided to alter as a matter of policy. This conforms to the common sense insight that an amendment to a statute presumably intends a change. *Marshfield* v. *Springfield,* 337 Mass. 633, 637-638 (1958). Sands, Sutherland Statutory Construction, § 22.30 (4th ed. 1972). The amendment here is quite different from the "clarification" in *Turnpike Realty Co. Inc.* v. *Dedham,* 362 Mass. 221, 228 (1972), cert. den. 409 U. S. 1108 (1973), where additional specific language was added by an amendment out of an abundance of caution to "clarify" general language and where there were no countervailing considerations to interpreting that general language to include the amendment. Contrast also *Fitz-Inn Auto Parks Inc.* v. *Commissioner of Labor and Indus.* 350 Mass. 39, 42 (1965).

In support of their contention that the 1968 statute requires uniformity the plaintiffs rely primarily on a memorandum attached to their brief (dated March 29, 1968, the date the 1968 statute was approved), issued by the executive secretary of the Group Insurance Commission,[5] and

---

vailing percentage it was then paying. But this would require an increase in benefits for employees outside the bargaining unit and thus tend to make bargaining on that issue atypical and more difficult.

[5] The Group Insurance Commission, established by St. 1955, c. 628, § 1 (G. L. c. 32A, § 3), is charged with the administration of the provisions of G. L. c. 32A, entitled "Contributory Group General or Blanket Insurance for Persons in the Service of the Commonwealth." It was also given authority under a 1960 amendment to G. L. c. 32B, entitled "Contributory Group General or Blanket Insurance for Persons in the Service of Counties, Cities, Towns and Districts . . .," to issue "rules and regulations [establishing] a schedule of group . . ." in-

directed to "mayors, county commissioners, city and town managers, boards of selectmen, and district commissioners." It was accompanied by a copy of the 1968 statute and set out what purported to be its explanation, including a statement that the statute required uniformity. The plaintiffs argue that this represents an administrative interpretation which must be given great weight. We do not pass on the defendant's objection that it was not made part of the evidentiary record — in this case the agreed statement of facts. See *Finlay* v. *Eastern Racing Assn. Inc.* 308 Mass. 20, 27 (1941) ; *Paananen* v. *Rhodes,* 1 Mass. App. Ct. 12, 15 (1975), and cases cited. But see *Palmer* v. *Selectmen of Marblehead,* 368 Mass. 620, 629 (1975), in which the court considered regulations of the State Board of Higher Education and a "recruitment brochure," neither of which was included in the "agreement as to evidence," but were attached as appendices to the brief amicus curiae of the State Police Association; no objection, however, was apparently made as to their use.

As appears from the statutes (see fn. 5) the commission was not involved with the allocation of insurance premiums. It had no administrative responsibility in that regard. Contrast *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 516-517 (1975). Further, the application of the 1968 statute was ultimately made at the local level, and the manner in which it was generally interpreted during the five years between 1968 and 1973 by cities, towns,

---

surance benefits under that chapter (G. L. c. 32B, § 11, as amended by St. 1960, c. 337; see St. 1973, c. 843, § 3, taking that authority away from the commission). General Laws c. 32B, § 3 (as amended by St. 1960, c. 337, § 2), required that "[a] copy of said agreements or contracts shall be filed with the commission by the appropriate public authority no later than thirty days after the effective date for a review by the commission to determine the compliance with [G. L. c. 32B] section eleven. Where noncompliance is noted, the commission shall send a report to the director of the bureau of accounts, department of corporations and taxation, and to the county commissioners, to the mayor or manager and city governments in cities, to the selectmen, or manager and selectmen in towns or to the prudential committee and commissioners in a district, as the case may be, for appropriate action."

and other local units would be the relevant administrative gloss.

The plaintiffs have also directed our attention to four other memoranda by the executive secretary of the Group Insurance Commission, addressed to the Joint Committee on Insurance of the Legislature, as illuminating the meaning of the 1968 statute. All of them are contained in the records of the Joint Committee on Insurance; each of the four is filed with the bill with reference to which it was submitted. We need not decide whether these memoranda are properly before us, since they do not change the result. Indeed, the memorandum, dated February 6, 1968, with reference to the bill which became the 1968 statute, supports our interpretation. It characterized the proposed legislation as allowing for "adjustments [which] would be caused by medicare premium rate changes *as well as collective bargaining agreements*" (emphasis supplied).[6]

Accordingly, we decline to supply in the 1968 statute the clause added by the 1973 statute. See *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.* 353 Mass. 81, 84 (1967), quoting from *Mitchell* v. *Mitchell,* 312 Mass. 154, 161 (1942). We affirm the judgment, the form of which has not been questioned.

*Judgment affirmed.*

---

[6] In view of our analysis and the position expressed in the memorandum dated February 6, 1968, we find unpersuasive anything to the contrary in the memorandum dated March 20, 1973, urging the passage of the 1973 amendment.

Nor do we find persuasive the two memoranda dated March 26, 1974, opposing in identical terms two bills proposed in 1974 which would have deleted the specific provision for uniformity in the 1973 statute. They are obviously *no part of the legislative history of the 1968 or 1973 statutes.* The memoranda do little more than state a view that differential treatment is unwise and affirm the desirability of the 1973 statute requiring uniformity.