CHESTER J. BRODERICK & others[1] *vs.* MAYOR OF BOSTON
& another.[2]

Suffolk. March 7, 1978. — April 25, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Home Rule Amendment. *Statute*, Acceptance. *Municipal Corporations*, Group insurance, Collective bargaining.

A municipality which had accepted the provisions of G. L. c. 32B, § 7A, enacted by St. 1968, c. 100, §1, was bound by a subsequent amendment to the statute which made no provision for separate acceptance. [100-103]

BILL IN EQUITY filed in the Superior Court on March 21, 1974.

The suit was heard by *John P. Sullivan*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Herbert P. Gleason*, Corporation Counsel (*Paul T. Edgar*, Assistant Corporation Counsel, with him) for the defendants.

*Frank J. McGee* (*Kevin P. Phillips* with him) for Chester J. Broderick.

*E. David Wanger & John F. McMahon*, for Michael Mullane, submitted a brief.

KAPLAN, J. General Laws c. 32B, § 7A, enacted in 1968 (St. 1968, c. 100, § 1), read in combination with other statutory provisions, authorized local governmental units to purchase group life, accidental death or dismemberment,

---

[1] The plaintiffs are the chairman, vice-chairman, and secretary of the Boston Police Patrolmen's Association, Incorporated, and the president of the Boston Firefighters Union, Local No. 718, International Association of Firefighters, AFL-CIO.

[2] The collector-treasurer of the city of Boston.

and hospital and medical insurance for their employees and the employees' dependents, and in that case obliged the governmental units to make contributions toward the premiums in amounts not less than 50% thereof. Section 7A was a local option statute, that is, by its terms each county, city, town, or district could elect whether to accept it; by c. 32B, § 10, an acceptance once given could not be revoked or rescinded. A number of governmental units accepted § 7A. The city of Boston was one of them and has purchased the indicated insurance. Boston read § 7A as not requiring uniformity or equalization in the premium contributions it made to the insurance it had procured covering the several groups of its employees (all such contributions, however, having to be at the rate of 50% or better). The provisions on the subject in Boston's several collective bargaining agreements therefore varied and Boston contributed at varying rates.

The Legislature by St. 1973, c. 789, § 1, approved on September 17, 1973, and effective on December 17, 1973, amended § 7A by adding a statement: "No governmental unit, however, shall provide different subsidiary or additional rates to any group or class within that unit." The unions representing the Boston policemen and firefighters claimed that they were now entitled to premium contributions by the city up to the higher level being furnished by the city to other groups of its employees, and in March, 1974, through representative plaintiffs, they commenced an action in the Superior Court against the mayor and collector-treasurer of Boston for a declaration to that effect with appropriate directive relief. The facts, as digested above, were reduced to a statement of agreed facts. It appears that the police were "equalized" as from January 1, 1975, and the firefighters, from July 1, 1975, so that all that remained in controversy was amounts claimed for the respective interim periods from December 17, 1973, the effective date of the 1973 amendatory statute. A judge of the Superior Court held for the defendants, believing that Boston was not bound by the amendment unless it chose to accept it. That

judgment was reversed by the Appeals Court with a rescript opinion in which a majority of the full court joined. *Broderick* v. *Mayor of Boston,* 5 Mass. App. Ct.     (1977). We granted further appellate review. We agree with the Appeals Court.

The defendants press the argument, in the first line, that as Boston became subject to § 7A only by its assent, it could be bound to an amendment of that section only by a separate and additional manifestation of its assent, which it had chosen not to give. On that view governmental units accepting local option statutes could freeze them against any subsequent changes enacted by the Legislature by refusing to acquiesce in them. Whatever may be thought of the wisdom of lodging such a power in the hands of the local organs of government, it is not accorded by the Constitution. On the contrary, § 8 of the Home Rule Amendment to the Constitution (art. 89, § 8) grants the General Court power "to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two"; and it cannot be doubted that legislation such as the 1973 statute amending § 7A does apply to a "class" which is "not fewer than two," namely, the class that accepted (or may hereafter accept) § 7A.

The question then reduces to whether the 1973 amendment looked to separate acceptance by the bodies which had previously accepted § 7A, the basic legislation of 1968, even though the amendment did not in terms require such acceptance and was simply interpolated in the older text. As the question is one of the Legislature's intention, which is to be raised not only from the particular text but from the surrounding circumstances, previous decisions in different contexts cannot furnish a sure guide.     .

In *Dudley* v. *Cambridge,* 347 Mass. 543 (1964), Cambridge accepted in 1950 legislation of 1945 with regard to the fixing of hours of duty of firefighters employed by municipalities. In 1957 the Legislature repealed the 1945 statute and enacted another in its place; a provision for ac-

ceptance by the localities appeared here as before. This court considered the changes to be quite drastic, and also took note of the form of the superseding statute which appeared to contemplate fresh acceptance. On an appraisal of the legislative design or purpose, we held that Cambridge was not bound by the 1957 statute as it depended on new local acceptance and Cambridge had not accepted it. (A further factor, perhaps, was that Cambridge seemed in fact not to have passed an appropriate ordinance to implement the 1945 statute.) In *McDonough* v. *Lowell,* 350 Mass. 214 (1966), Lowell in 1963 had accepted a 1951 statute by which it adopted for its engineers the remuneration plan "currently in effect" for engineers in the Department of Public Works of the Commonwealth. Very shortly after this acceptance, in 1963, there was legislation revising upwards the remuneration plan for the State engineers, and Lowell resisted having to pay its engineers accordingly. The court held Lowell to be bound in accordance with the later State plan. It said "Lowell, once it had accepted [the 1951 statute], could not rescind its acceptance without express statutory authorization to do so,"[3] *id.* at 216, and none appeared in the 1951 statute; and the expression "currently in effect" appearing in that statute was read as meaning in effect from time to time, which brought to bear the legislation of 1963. We take note also of the Appeals Court case of *Costa* v. *Selectmen of Falmouth,* 3 Mass. App. Ct. 57 (1975). Falmouth had accepted, in 1972, § 11F of c. 32B, passed in 1971, authorizing the purchase of group disability income insurance for the employees of municipalities, but the town meeting had failed to act under the authorization. Employees brought suit to compel such action. After an unfavorable decision at trial level, and pending appeal by the employees, the Legislature in 1974 enacted a statute which in effect compelled any municipality which accepted § 11F to make the necessary appropriation to carry it out. The

---

[3] The court cited the cases of *Oleksak* v. *Westfield,* 342 Mass. 50, 52-53 (1961), and *Brucato* v. *Lawrence,* 338 Mass. 612, 615-616 (1959).

court said there was no occasion to deal with the correctness of the decision below, as the legislation of 1974 which had intervened would be binding on the town.[4]

As already observed, these decisions cannot be wholly dispositive of our problem, but they are suggestive of proper approaches. The *Dudley* case shows that the form of the subsequent legislation may be indicative as to whether renewed acceptance by the localities is called for. From the *McDonough* case we can take the lesson, at least, that an acceptance, once given, cannot easily be departed from even in the absence of a provision such as c. 32B, § 10. Sometimes there will be room for interpretation whether the first acceptance holds despite an amendment of the original statute. Thus the fact that the amendment was not germane to the subject of the original would tend to look to a fresh acceptance.

The form of the amendatory legislation in the present case does not resemble that in *Dudley*. And there is room for plausible contention that the 1973 legislation was no more than a clarification of § 7A. It happens that an action was brought on just that theory against the school committee of Gloucester demanding "equalization" of premium contributions for the period from acceptance by Gloucester up to the effective date of the 1973 amendatory legislation. *Brooks* v. *School Comm. of Gloucester*, 5 Mass. App. Ct. 158 (1977). We need not comment here on the Appeals Court decision holding that the 1973 amendment was not merely an express statement of what was implied in § 7A from the beginning. However, the discussion in *Brooks* will suggest that the amendment was not a drastic incursion on

---

[4] The following authorities in other States will be found of some interest and not inconsistent with the result we reach: *West Chicago Park Comm'rs* v. *McMullen*, 134 Ill. 170 (1890); *Miller* v. *Louisville*, 321 S.W. 2d 237 (Ky. 1959); *Swett* v. *Sprague*, 55 Me. 190 (1867); *Wayne County Prosecuting Attorney* v. *Highland Park*, 317 Mich. 220 (1947); *Hall* v. *Sedalia*, 232 Mo. 344 (1911); *Chapman* v. *Adams*, 210 Mo. App. 680 (1922); *Emanuel* v. *Sproat*, 136 N.J.L. 154 (1947), aff'd, 137 N.J.L. 610 (1948).

§ 7A but a measure that might commend itself to the Legislature as a common sense corrective of a difficulty inherent in the practical operation of that section.

The defendants have argued that to hold them to the 1973 amendment would be inconsistent with G. L. c. 150E, the collective bargaining statute for public employees, in the sense that the rates of Boston's premium contributions in the period from December 17, 1973, to the respective dates of actual equalization were worked out in collective agreements in force during that time. But the collective agreements could not override the 1973 amendment if otherwise applicable, as it was. See c. 150E, § 7. There is also argument that to bind the city without its renewed acceptance is to allow the Commonwealth to "entrap" it. That is an inflated word as applied to the present facts. In all events the Constitution does not permit us to base decision on a view of the Commonwealth or the Legislature as engaged in a stealthy game with municipalities. Nor are we inclined to see the municipalities as helpless in putting any case they may have to the Legislature at the stages when legislation that may affect them is under consideration.

Agreeing with the Appeals Court, we reverse the judgment of the Superior Court and remand the case to that court for entry of a new judgment ordering the city to equalize its rates of contribution for the groups of employees from the effective date of St. 1973, c. 789, § 1.

*So ordered.*